FAY H. BROWN

*v.*

ANTHONY DeMARIE, *et al.*

(No. 9984)

FAY H. BROWN

*v.*

ANTHONY DeMARIE, *et al.*

(No. 9985)

Submitted January 20, 1948. Decided March 16, 1948.

*Steptoe & Johnson, Oscar J. Andre,* and *Kingsley R. Smith,* for plaintiff in error, Anthony DeMarie.

*C. Brooks Deveny,* for plaintiffs in error, *William D. Hostutler, et al.*

*A. Blake Billingslea,* for defendant in error.

LOVINS, JUDGE:

Separate writs of error were granted to Anthony De Marie and to William D. Hostutler and John Bilotta, partners doing business as The Sky Club, to a judgment of the Circuit Court of Marion County, rendered on a verdict of the jury assessing damages for plaintiff, Fay H. Brown, in the amount of $7,000.00, in an action of trespass on the case instituted by Brown against the defendants jointly. The facts on which the action was instituted are as follows:

DeMarie was the owner of a four-story building located in Fairmont and known as the Odd Fellows Building. Hostutler and Bilotta were tenants in the building, having a lease covering the fourth floor thereof, and were partners in the operation therein of a night club known as "The Sky Club". DeMarie furnished elevator service, and personnel for the operation thereof, for all the tenants of the building.

Shortly after midnight on March 29, 1946, the plaintiff, accompanied by James Malloy, entered the ground floor of defendant's building, went to the elevator and was carried to the fourth floor. Although the evidence is not clear as to the physical disposition of the rooms located on the fourth floor, it appears that upon leaving the elevator one enters a "foyer" or hallway, from which entrance may be had to certain rest rooms. On the opposite side of such hallway is a large double door opening into a small room. In the small room, on the side opposite the double door leading to the hallway, is another large double door which gives access to a larger room, known as "The Sky Club".

On the night in question a desk was located either in the doorway between the hallway and small room, or just within the hallway, at which admission tickets to the club could be purchased.

Upon their arrival in the hallway, plaintiff and Malloy attempted to obtain admission to the club. Such admission was refused them, and the reason therefor is not clear. Plaintiff states that he does not know why he was refused admission, but defendants, Hostutler and Bilotta, assert that the reason therefor was that plaintiff was intoxicated.

In any event plaintiff testified that he and Malloy remained in the hallway for a period of ten to fifteen minutes, when he heard a commotion coming from the club room. When he looked in that direction, he saw two men, later identified as Van Pelt and Deem, who had been patrons of The Sky Club, leaving the club room and entering the small room. He describes the action of these men as being "like a couple of wild bulls busting their way through". When plaintiff noticed these men, he suggested to Malloy that they leave, to which Malloy assented. The two immediately walked across the hallway to the elevator, which was then stopped on the fourth floor, with the door thereto open. Plaintiff states that as he entered the elevator, he told the elevator operator, a colored girl, not to permit the other two men, Deem and Van Pelt, to enter the elevator, adding, however, that he

did not "see how she could prevent" their entrance. It is not clear whether Deem and Van Pelt followed immediately after plaintiff in entering the elevator, or whether there was an interval of about five or six seconds. In either event, Deem and Van Pelt did enter the elevator and immediately after the elevator started its descent, either Van Pelt or Deem assaulted the plaintiff, rendering him unconscious.

Malloy testified substantially in the same manner as did plaintiff, but the trial court restricted his testimony with respect to these occurrences as being evidence against the defendant, DeMarie, only. Malloy further stated that after the elevator had descended a few feet, it went back to the fourth floor; its doors opened; and he got out. Thereafter the elevator descended to a place between the first and second floors, where it remained until the police arrived.

It is not disputed that DeMarie, who heard of the commotion on the elevator, but was not a witness to any of the events prior thereto, managed to stop the elevator between the first and second floor, by disconnecting the electric current, after the assault had ended. Having done so, he summoned the aid of police officers, who extricated plaintiff, Van Pelt and Deem from the elevator cage.

As a result of the assault, plaintiff suffered a broken nose; a fracture of the top of the spinous process at the back of the seventh cervical vertebra; the loss of one front tooth; the loss of a portion of a jaw tooth; at least one of his eyes was blackened; and he received various and sundry cuts and bruises about his body. Further details of plaintiff's injuries, the extent and duration thereof, will not be stated for reasons hereinafter appearing.

At the trial defendants adduced testimony to the effect that plaintiff and Malloy were intoxicated at the time of their arrival at The Sky Club, and were refused admission thereto for that reason. It was further stated that plaintiff, without provocation, assaulted Van Pelt in the hallway before obtaining entrance to the elevator; that

plaintiff, alone, followed Van Pelt and Deem into the elevator, at which time the altercation between the three continued. The elevator operator testified that shortly after she had started the descent of the elevator, one of the three men struck her in the face, whereupon she returned to the fourth floor and left the elevator. We do not, however, consider the defendants' testimony in these respects, for the reason that it is contradictory of the testimony of plaintiff, and of witnesses testifying in his behalf, in whose favor the jury has returned its verdict. We consider only such facts as are not disputed, and as to those in dispute we consider only the proper versions thereof, and the proper inferences arising therefrom, which are most favorable to plaintiff. *Adkins* v. *Transit Co.,* 127 W. Va. 131, 31 S. E. 2d 775; *Divita* v. *Trucking Co.,* 129 W. Va. 267, 40 S. E. 2d 324.

When the plaintiff had closed his case in chief, and again at the conclusion of all the evidence, motions were made in behalf of DeMarie and the other defendants for directed verdicts, which were overruled. The defendants, Hostutler and Bilotta, offered a peremptory instruction, which was refused. After the verdict had been returned motions were made by defendants to set the same aside and grant them a new trial, which motions were likewise overruled.

Plaintiff offered fourteen instructions, eight of which were given as offered; two others, having been amended by the Court without objections, were given; and four were refused. Defendant DeMarie offered twelve instructions, three of which were given, the remaining nine being refused. Defendants Hostutler and Bilotta offered twenty-three instructions, nine of which were given and fourteen of which were refused. The giving, refusing and amending of all the instructions offered were consistent with three legal theories on which the trial court acted: (1) that liability of all three defendants was joint as well as several; (2) that all three defendants owed to plaintiff the highest degree of care; and (3) that there was no evidence of permanent injury to plaintiff. Since a discussion of the correctness of these three legal theories will deter-

mine all assignments of error, including those arising from the actions of the trial court in overruling motions for directed verdicts and motions to set aside the verdict, this opinion is limited to a discussion of those theories.

The plaintiff, in his original and amended declarations, made allegations to the effect that all three defendants were the joint owners and operators of the business known as The Sky Club, as well as the elevator giving one means of access thereto, and as such they were jointly liable. But, at the conclusion of all the evidence given in his behalf, plaintiff joined the defendants in a stipulation to the effect that DeMarie owned the building; that DeMarie furnished elevator service to all the tenants of the building, including The Sky Club; and that DeMarie had no interest in the management and operation of The Sky Club other than his interest as owner of the building. Such action on the part of plaintiff is equivalent to an abandonment of those allegations of joint ownership and operation which would give rise to joint liability of all three defendants.

There is evidence indicating that on some occasions DeMarie permitted Hostutler and Bilotta to place the table, at which admissions to The Sky Club could be purchased, on the ground floor of the building; and that on such occasions only persons who had purchased such admissions were permitted to use the elevator service supplied by DeMarie. Furthermore, it was shown that on certain other occasions the operation of the elevator was delegated to Hostutler and Bilotta, or their employees. Plaintiff argues, in effect, that such circumstances give rise to a joint enterprise in the operation of the elevator, thus creating joint liability as to the three defendants. We do not agree with such contention. Regardless of what may have been the situation at other times, it is not disputed that on the occasion of plaintiff's injuries for which recovery is here sought, DeMarie had exclusive control over the elevator and its operation, while defendants, Hostutler and Bilotta, were occupying and using the fourth floor of the building only, wherein they, exclusively, con-

ducted their business known as The Sky Club. It is so stipulated. See *Williamson* v. *Wellman* (Va.), 158 S. E. 777, 778; *McMechen* v. *Coal Company*, 88 W. Va. 633, 636, 107 S. E. 480; *Marsh* v. *Riley*, 118 W. Va. 52, 188 S. E. 748; *Lowe* v. *Inv. Co.*, 119 W. Va. 663, 196 S. E. 490.

It is obvious that the relationship between plaintiff and DeMarie, as well as the duties of care, if any, imposed upon them as a result of that relationship, is separate and distinct from the relationship between plaintiff and Hostutler and Bilotta, and the duties of care, if any, imposed as a result thereof. Although there may be such separate, but concurrent, acts of negligence on the part of each of the three defendants, as to support a verdict against them jointly, nevertheless, in the circumstances shown herein, there can be no single, joint act of negligence on which a verdict for or against one, must, as a matter of law, likewise be for or against the others. The trial court erred in treating the duties owed plaintiff by all three defendants as being joint.

This brings us to a discussion of the second legal theory upon which the trial court acted, as hereinabove stated. But since the duties, if any, owed plaintiff are separate and not joint, the degrees of care required of DeMarie and the other defendants must be discussed separately.

Defendants Hostutler and Bilotta were the operators of an establishment furnishing food, drink and entertainment to its patrons. On the night in question the establishment known as The Sky Club did not extend beyond the fourth floor of the building, excluding the elevator, as has been heretofore shown. Their control over the premises being so limited, they owed no special duty of care to plaintiff, who was injured by third parties outside those premises. The trial court should have sustained the motion to direct a verdict in their behalf.

On the other hand, the defendant DeMarie had control over the premises on which plaintiff suffered his injuries. And it is argued that the premises, to-wit, the elevator, constituted a common carrier, thus sustaining *per se* the

trial court's theory that from DeMarie the plaintiff was entitled to the exercise of the highest degree of care. But can DeMarie, as the operator of the elevator in the instant case, be treated as a common carrier?

Although this question is one of first impression in this jurisdiction, it has been the subject of considerable judicial discussion in other jurisdictions. The views which the courts of other jurisdictions have taken are variant and have been the subject of many annotations by the editors of legal reference books. See, among others, 2 L. R. A. (N. S.) 744; L. R. A. 1915 E. 722; 33 A. L. R. 181, 203, *et seq*; 9 R. C. L., Elevators, Section 2; 13 C. J. S., Carriers, Section 533, 687; 18 Am. Jur., Elevators and Escalators, Section 3. The courts of some jurisdictions have held that operators of passenger elevators are not common carriers. See *Seaver* v. *Bradley,* (Mass.) 60 N. E. 795; *Griffen* v. *Manice,* (N. Y.) 59 N. E. 925; *Kelly* v. *Lewis Inv. Co.,* (Ore.) 133 P. 826; *Edwards* v. *Manufacturers' Bldg. Co.,* (R. I.) 61 Atl. 646; *Farmers' & Mechanics' Nat. Bank* v. *Hanks,* (Tex.) 137 S. W. 1120; *Mitchell* v. *New York Life Ins. Co.,* (C. C. .A., 7th Cir.) 75 Fed. (2d) 107. Courts of other jurisdictions have held that the operators of passenger elevators are. common carriers. See *Murphy's Hotel* v. *Cuddy's Adm'r.,* (Va.) 97 S. E. 794; *Monahan* v. *Equitable Life Ins. Co. of Iowa,* (Iowa) 156 N. W. 994; *Treadwell* v. *Whittier,* (Cal.) 22 P. 266; *Hartford Deposit Co.* v. *Sollitt,* (Ill.) 50 N. E. 178; *Orcutt* v. *Century Bldg. Co.,* (Mo.) 99 S. W. 1062.

In *Gillingham* v. *Ohio Riv. R'd Co.,* 35 W. Va. 588, 14 S. E. 243, this Court stated that there are at least two elements prerequisite to establish that an operator of a conveyance is a common carrier: (1) the carriage must be for hire; and (2) the operator must undertake to carry all persons, indifferently, applying for passage. Both elements are lacking in the instant case.

It is clear in the instant case that no fare, in its accepted sense, is charged a passenger for the transportation provided by DeMarie in the operation of the elevator. We

do not accept the reasoning of those courts, as illustrated by the case of *Springer* v. *Ford* (Ill.), 59 N. E. 953, which have held that the hire received is the rent of the building. Furthermore, DeMarie was under no obligation to carry any passenger. *Seaver* v. *Bradley, supra; Griffen* v. *Manice, supra.*

Accordingly, we hold that DeMarie was not a common carrier in the operation of the elevator, thus requiring, *per se,* that he exercise the highest degree of care toward plaintiff.

However, even if we should hold that DeMarie was a common carrier in the operation of the elevator, the trial court should have sustained his motion to set aside the verdict and grant him a new trial. "The very high degree of care ordinarily required of a carrier to protect and carry passengers safely does not impose impossible or unreasonable protection, something against which no skill and foresight can reasonably provide." *Thompson* v. *Railway Co.,* 99 W. V. 207, 128 S. E. 110. The plaintiff, by his own admission, testified that the elevator operator could not have prevented the entry of Deem and Van Pelt into the cage after she had, or reasonably should have, become aware of any impending danger to plaintiff.

But what duty of care was required of DeMarie toward plaintiff? Many courts, representing, perhaps, the weight of authority, have required the operator of an elevator to exercise the highest degree of care to prevent injuries to passengers arising from such operation, regardless of whether or not such operator is considered a common carrier. *Kelly* v. *Lewis Inv. Co., supra; Farmers' & Mechanics' Nat. Bank* v. *Hanks, supra; Jenkins* v. *Missouri State Life Ins. Co.,* (Mo.) 69 S. W. 2d 666; *Southern Building & Loan Ass'n.* v. *Lawson,* (Tenn.) 37 S. W. 86; *Goodsell* v. *Taylor,* (Minn.) 42 N. W. 873; *Edwards* v. *Burke,* (Wash.) 78 P. 610. However, courts of other states, such as Michigan, Rhode Island and New York, have adopted a more restricted view, applying the rule of reasonable care. See *Burgess* v. *Stowe* (Mich.), 96 N. W. 29; *Edwards* v. *Manufacturers' Bldg. Co., supra; Griffen* v. *Manice, supra.* All

courts are agreed that the operator is not an insurer of the safety of passengers on an elevator.

But in all of the foregoing cases, the cause of action arose by reason of some alleged fault or defect in the construction of the elevator, its shaft, well and appurtenances, or because of some failure to properly operate and maintain the same. In the instant case, no such defect, fault or failure is alleged or proved. The declaration, as amended, charges defendants with duties "* * * to use due and proper care to safely carry and transport said plaintiff * * * and to protect the plaintiff from the misconduct or assault of fellow passengers, and to prevent any injury to the plaintiff resulting from the torts, assaults, or misconduct of fellow passengers * * * and to hire and employ sufficient, capable, competent agents, servants and employees to enable them to so carry, transport and protect plaintiff as a passenger on said elevator and to prevent injury to him, resulting from the torts, assaults or misconduct of fellow passengers." In other words, the mechanical and structural condition of the elevator is not involved, nor is the manner and method of operation concerned. We are not here concerned with an application of the doctrine of *res ipsa loquitur,* nor are we concerned with cases wherein special duties of care are imposed by reason of legislative enactments, or by reason of the fact that the premises constituted entrapments or dangerous instrumentalities. Accordingly we express no opinion as to cases of that nature.

The gravamen of plaintiff's case is that DeMarie is liable for injuries sustained by plaintiff while on premises under defendant's control. The fact that the injury occurred upon the elevator is incidental and of importance only insofar as it restricts liability, if there be any at all, to defendant, DeMarie. The duty of care owed by DeMarie is the same as if the injuries complained of occurred on premises under his exclusive control at a place other than the elevator. That duty of care depends upon what relation plaintiff bore to the defendant's premises, whether trespasser, licensee or invitee.

An invitee of a tenant bears that same relationship to the tenant's landlord, as respects the duty of care owed him, when the injury occurs upon a portion of the premises, exclusively under landlord's control, which is a known means of access to the leased premises. *Williamson* v. *Wellman, supra; Marsh* v. *Riley, supra; Lowe* v. *Inv. Co., supra.* By analogy, it follows that in such instance the landlord owes the same degree of care to the injured third party as his tenant would owe, had the injury occurred upon the premises exclusively under tenant's control.

It is clear that when plaintiff first entered the premises, he was an invitee of Hostutler and Bilotta. It is not disputed that they had issued to him a so-called membership card to The Sky Club. But it is not disputed that on the night of the injury plaintiff's application for admission was refused for reasons not clearly shown and immaterial. to this decision. Such refusal of admission is tantamount to a revocation of the invitation to be on the premises.

In *Roberts* v. *Axe & Tool Co.,* 104 W. Va. 452, 140 S. E. 283, this Court held: "The duty of reasonable care which a property owner owes to an invitee is co-extensive with, and limited by, the invitation." Here, although the invitation was effectively revoked, plaintiff remained on the premises some ten or fifteen minutes. At best, plaintiff can be regarded only as a licensee. *Perryman* v. *Lumber Co.,* 113 W. Va. 848, 853, 169 S. E. 462. "One who permissively enters property, but without invitation or inducement from the owner, ordinarily enters at his own risk * * *." *Johnson* v. *Gas Company,* 112 W. Va. 578, 166 S. E. 118. The trial court erred in holding that defendant De Marie was required to exercise the highest degree of care toward plaintiff. The record here presented does not disclose the violation of any duty of care owed by DeMarie to plaintiff.

Inasmuch as the judgment must be reversed and the verdict set aside for reasons we have heretofore discussed, the question of the trial court's ruling that no permanent

injuries had been proved becomes unimportant, insofar as defendants contend that the damages are excessive. But the plaintiff attempts to assign cross error to the same ruling. The error so assigned was raised by the trial court's action on Plaintiff's Instruction Nos. 11 and 16. Each of these instructions, as tendered, tells the jury what they may consider in assessing plaintiff's damages, and portions of each permit the jury to determine damages for permanent injuries. The record discloses that as the instructions were tendered, various objections were raised by defendants, including ones to the effect that there was no evidence of permanent injuries. Thereupon, the trial court amended both instructions by deleting the portions of each relative to permanent injuries. The record discloses that no objections were made or exceptions taken to such action of the trial court. Upon further consideration of the instructions as so amended, the trial court gave Plaintiff's Instruction No. 16, as amended, and refused Plaintiff's Instruction No. 11, as amended.

The reason for the refusal of the Plaintiff's Instruction No. 11, as amended, is not shown, but clearly it is, in effect, a repetition of Plaintiff's Instruction No. 16, as amended. It is equally clear that plaintiff did not except to the amendment of either instruction. "* * * Exceptions * * * to modified instructions shall be made at the time, or the same shall be deemed to be waived." Rule VI (e), Rules of Practice and Procedure for Trial Courts, 116 W. Va. lxiii. Accordingly, we do not consider the cross assignment of error, nor discuss the details of plaintiff's injuries, the extent and duration thereof.

For reasons hereinabove stated, the judgment of the Circuit Court of Marion County is reversed, the verdict is set aside, and, in accordance with pt. 8, syl., *Koblegard Co.* v. *Maxwell*, 127 W. Va. 630, 34 S. E. 2d 116, defendants are awarded a new trial.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*