207 S.E.2d 923 (1974)
James HAMILTON, infant, etc., et al.
v.
Anderson H. BROWN.
No. 13410.
Supreme Court of Appeals of West Virginia.
July 2, 1974.
Dissenting Opinion August 15, 1974.
*924 Andrew J. Goodwin, Charleston, for appellants.
Willard L. Brown, Catsonis & Linkous, Leo Catsonis and Thomas L. Linkous, Charleston, for appellee.
NEELY, Justice:
This is an appeal from a final order of the Circuit Court of Kanawha County affirming an order of the Common Pleas Court of Kanawha County by which the trial court set aside a jury verdict for the plaintiffs and directed a verdict for the defendant.
The action below was for personal injuries arising from an accident which occurred on August 22, 1966 when the infant plaintiff, James Hamilton, then thirteen years old, was visiting his grandfather, James Brooks, who lived near Dunbar, West Virginia. The infant plaintiff and several of his young friends from the Dunbar area were returning from a small concession known locally as the "Shack" or "Stand" which sold food, soft drinks, and operated pinball machines for the amusement of the children in the neighborhood. The concession was operated on property owned by the defendant, Anderson H. Brown, who rented the premises to a Henry Dickerson, who managed the concession.
When the boys left the "Shack" they elected not to proceed west along Route 25 approximately 153 ft. to the Brooks driveway, and then down the driveway approximately 80 ft. farther to the Brooks house, but rather chose to take a diagonal route down a footpath from the rear of the "Shack", across a small stream via a footbridge, and then along the footpath to the Brooks home, a total distance of approximately 231 ft. As the boys crossed the footbridge spanning the stream a cement slab gave way causing the Hamilton boy to fall into the stream, which resulted in severe permanent injury to his right knee. The jury found in favor of the infant plaintiff in the amount of $15,000 and for the infant's mother in the amount of $3,200. The Court, nevertheless, sustained defendant's motion for a directed verdict under Rule 50, W.Va.R.C.P.
Plaintiffs contend, first, that as the defendant owned the "Shack" on one side of the stream and the residential property on the other side of the stream, he knew or should have known that local people frequently used the bridge in question for ingress and egress to the "Shack." Therefore the infant plaintiff contends that he was a business invitee of the defendant and was entitled to have the premises maintained in a reasonably safe condition for his use. The record clearly indicates that the bridge was *925 appurtenant to the rental property on the opposite side of the stream from the "Shack" and was unrelated to the operation of the concession. The plaintiff was unable to present evidence that persons patronizing the "Shack" had received permission to use the footbridge as a shortcut and one of the plaintiffs' witnesses testified specifically that while he often used the bridge as a shortcut, he had no permission to do so.
Plaintiffs rely principally on two cases, both of which are distinguishable on the facts. The first is Morgan v. Price, 151 W.Va. 158, 150 S.E.2d 897 (1966), where the defendant owned a marina and held himself open to the general boating public by renting mooring spaces and selling gasoline for boats as well as ice cream, soda, and confections. The plaintiff in Morgan docked her boat at one of defendant's piers and was injured when she fell through a defective board as she alighted from her craft. This Court ruled that the jury could infer from the evidence that plaintiff entered the business premises by a normal means of ingress for patrons pursuant to an implied invitation to enter the premises from the water. There was no similar evidence in the case at bar. The entrance to the "Shack" was on Route 25 and there is no evidence from which a court or jury could infer an implied invitation to use the footbridge.
The instant case is also distinguishable from the plaintiffs' second principal case, Brown v. De Marie, 131 W.Va. 264, 46 S.E.2d 797 (1948), which holds that a landlord who maintains common passageways for various tenants has a duty of care to keep the passageways in a safe condition for the tenants' invitees. In the case at bar, there is no question of a common passageway. The "Shack" had a clear means of ingress and egress on Route 25 and the evidence demonstrates that the cement bridge in question was built exclusively for the convenience of the persons renting the house appurtenant to the bridge.
This case is much closer to the case of Wellman v. Christian, 147 W.Va. 189, 126 S.E.2d 375 (1962) in which the plaintiff was the mother of defendant's former wife who entered defendant's property to collect some canning jars which her daughter had left on the property. Before the plaintiff's visit, the defendant had cleaned the basement stairs and removed certain tacks which secured the rubber treads. When the plaintiff attempted to go down the steps, she slipped and fell. The court ruled that as a matter of law the plaintiff was a licensee and not an invitee as she was using the premises for her own purposes, and stated the law as follows at page 194, 126 S.E.2d at page 379:
"`Mere permissive use of the premises, by express or implied authority ordinarily creates only a license.' (citation omitted) As to a licensee, the law does not impose upon the owner of the property an obligation to provide against dangers which arise out of the existing condition of the premises inasmuch as the licensee goes upon the premises subject to all of the dangers attending such entry." (citation omitted)
While the Court recognizes that in the case at bar the defendant owned two types of real estate directly adjacent to one another, one a business establishment and the other a residential rental house and lot, there is no evidence in the record to indicate that the two pieces of property were operated together. Unlike the Morgan case, supra, there was no evidence that defendant's business was enhanced because of the availability of the bridge in question as a means of entering the "Shack" and, therefore, the defendant cannot be held to have elevated the status of the infant plaintiff from that of licensee to that of invitee.
Accordingly, the judgment of the Circuit Court of Kanawha County is affirmed.
Affirmed.
HADEN, Justice (dissenting):
I respectfully dissent from the factual determinations and legal conclusions reached by the majority.
*926 The record of this case discloses that the defendant landlord, Anderson H. Brown, owned one large piece of property in Dunbar, comprising several acres. On this property there was located two rental houses, a tavern and a confectionery known as the "Shack" or "Stand" which sold food, soft drinks, and operated pinball and other coin devices for the amusement of children in the neighborhood. The property was intersected by a stream which separated the rental houses from the commercial establishments. A concrete footbridge very near one of the houses traversed the stream. The plaintiff, then thirteen years old, was a business invitee of the Shack which was operated by Henry Dickerson, the lessee of Anderson H. Brown under oral agreement. James Hamilton had accepted the business invitation, had completed a purchase and was traveling on his way back to his grandfather's property located adjacent to the defendant's property when he was injured by reason of the defective condition of the footbridge on the property. An invitee of a tenant is an invitee of the landlord as respects the duty of care owed him, when the injury occurs upon a portion of the premises, exclusively under the landlord's control, which is a known means of access to the leased premises. Brown v. De Marie, 131 W.Va. 264, 274, 46 S.E.2d 797 (1948).
At trial, the defendant contended that the footbridge in question was appurtenant to and served only one of the rental residences on the lessor's property. Extensive testimony, however, disclosed that the footbridge was an integral part of a pathway permissibly used by residents of both the adjacent nonowned property and the subject property owned by the defendant. It was commonly used by many people to travel to and from their residences to the Shack and the other place of business on the lessor's property, and to other points beyond the lessor's property, as well. It was true that the defendant had never expressly granted permission to anyone to use the footbridge in question, but it was just as true that many people, including strangers to the property, had used the footbridge with the lessor's knowledge over a great period of time as a method of ingress and egress to and from the commercial businesses operated on the defendant's property, with his implied consent.
The evidence in this case also demonstrates that the physical location of the entrance to the Shack faced to the interior of the Brown property and not to the exterior of that property as it is bounded to the rear by a public highway. The writer of the majority opinion erroneously placed the entrance to the Shack property as fronting on State Route No. 25 and implied that the plaintiff and others had thereby a ready and more convenient means of access to the property other than through the use of the footbridge. On this erroneous factual assumption, the reviewing courts held that as the plaintiff and others had alternative access from a public highway, chose to use the defendant's footbridge route as a means of access to the Shack, they were licensees only. That conclusion does not follow where those who wished to enter Brown's property from another more convenient point, permissively used by the public, entered the property and exited from it after conducting business on the property. The reasons and purposes which bring a person to land determine his classification as trespasser, licensee, or invitee. The choice of routes, dangerous and safe, and the conditions attendant thereon, latent and patent, are matters only of defense, which do not define the status of the user who enters land.
The majority has also done what the property law of this State does not recognize. It has subdivided and severed each improvement on the Brown property from the undivided unit of real estate owned by the lessor, without benefit of instrument of conveyance or lease.
In the face of the undisputed evidence adduced in this case and the property law of this State, it strikes me as remarkable that the majority would choose to treat as *927 two separate parcels of real estate that which the law recognizes as one, and that which the residents of the area and users of the property also regarded as a unit of property. In law, "premises" of the Anderson H. Brown property are coextensive with his boundary lines. (Citations omitted).
On the proper facts of this case as they were proved and submitted to the jury, and upon the resolution of factual disputes properly resolved by the jury, this case should have been indistinguishable from the case of Morgan v. Price, 151 W.Va. 158, 150 S.E.2d 897 (1966). In the Morgan case, the fact situation was more favorable to the landowner than that which formed the basis for defense in this litigation. There, the defendant owned and operated a boat dock on the Monongahela River. In connection with this business, the defendant also offered fuel and foodstuffs for sale and provided picnic tables for dining. The land-owner-operator prominently displayed "No Trespassing, Private Property" signs on his shoreline and docking area. Although the plaintiff was not a tenant at the defendant's marina and, in fact, rented from another such facility on the river, she entered defendant's property to purchase food from defendant's vending machines. As she walked along the dock, after mooring her boat, one of the boards in the dock broke and she fell through, seriously injuring herself. The defendant at trial contended the injured party was a mere licensee or trespasser. The plaintiff successfully contended for the status of business invitee. This Court affirmed the judgment of the trial court upon a jury verdict and held for the plaintiff:
"A person is an invitee when for purposes connected with the business conducted on the premises he enters or uses a place of business. Point 1 Syllabus, Burdette v. Burdette, 147 W.Va. 313 [127 S.E.2d 249]." Syllabus point 1, id.

"The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition. Point 2, Syllabus, Burdette v. Burdette, 147 W.Va. 313 [127 S.E.2d 249]." Syllabus point 2, id.

If this Court was correct in its decision in the Morgan case, and I believe it to have been, then the law of that case should control the resolution and outcome of this case.
As in Morgan, the jury could lawfully infer and conclude from the evidence that the plaintiff entered the business premises by a normal means of ingress for patrons pursuant to an implied invitation to enter the premises. While a business invitee on the premises and while attempting to exit therefrom, the plaintiff was seriously injured by reason of a defective condition of the premises for which the defendant was chargeable with the knowledge that such defective condition could proximately result in injury and damage to a business invitee.
This Court, and the lower courts, have also unconscionably invaded the province of the jury and, in doing so, have redecided factual conflicts, previously resolved by the jury, so as to fashion a result where the landowner is held only to those reduced legal duties owed a licensee. This type of decision illustrates anew that juries should decide facts; appellate courts, particularly, should decide legal questions.
For the foregoing reasons I would have reversed the judgment of the Circuit Court of Kanawha County, reinstated the jury verdict and awarded judgment thereon to the appellant.
I am authorized to state that Justice SPROUSE concurs in the views expressed in this dissenting opinion.