457 S.E.2d 431

**Sandra D. JACK, Plaintiff
Below, Appellant,**

v.

**J. Russell FRITTS, Defendant
Below, Appellee.**

No. 22183.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 24, 1995.

Decided March 24, 1995.

Laura Coltelli Rose, Ronald M. Harman, Coltelli & Associates, Martinsburg, for appellant.

William Richard McCune, Jr., Tammy Mitchell Bittorf, Jackson & Kelly, Martinsburg, for appellee.

WORKMAN, Justice:

■ This case is before the Court upon the appeal of Sandra D. Jack from the June 22, 1993, order of the Circuit Court of Jefferson County, which granted the Appellee's, J. Russell Fritts', motion for summary judgment, and the July 2, 1993, order, which denied the Appellant's motion for sanctions pursuant to West Virginia Rule of Civil Procedure 11 (hereinafter also referred to as "Rule 11"). The Appellant contends that the following assignments of error were committed by the trial court: 1) The trial court erred in granting the Appellee's motion for summary judgment and denying the Appellant's motion for reconsideration; and 2) The trial court erred in denying the Appellant's motion for Rule 11 sanctions. Having reviewed the record, the parties' briefs and all other matters submitted before this Court, we conclude that a landlord owes no duty to a tenant's social guest to protect that guest from the criminal conduct of third parties. Therefore, we affirm the decision of the circuit court.

## I.

On October 27, 1988, Sheila Meade, the Appellant's friend,[1] was residing with her father in an apartment located at 309 West Washington Street in Charles Town, West Virginia. The apartment building was owned and operated by the Appellee, J. Russell Fritts. On that day, the Appellant entered the Appellee's apartment building to visit Ms. Meade. The Appellant was not an invited or expected guest of the Meades on that

---

1. The Appellant also alleges in her brief that Ms. Meade was her cousin; however, when the Appellant was asked during her deposition whether she was related to Ms. Meade, the Appellant responded "[n]o."

day, but the record established that she was a frequent visitor of the Meades.

When the Appellant arrived at Ms. Meade's apartment, Ms. Meade was either being assaulted by or had just been assaulted by Eddie Fletcher. It is significant to note that it is not known when or how the assailant entered the Appellant's apartment building; but, at the time of the incident, the exterior door to the apartment building was not locked. Further, at the time the assailant entered Ms. Meade's apartment, Ms. Meade had opened her apartment door to the assailant voluntarily, although she attempted to close the door on the assailant and was prevented from doing so by him.[2] However, Ms. Meade, in her deposition, expressly stated that she had seen the assailant before and that, although she did not know that it was him at the door at the time she opened it, she would have voluntarily opened the door to him in any event.[3] The Appellant, upon entering the apartment, was also assaulted and injured by the assailant in the apartment.[4]

### II.

We have previously held in syllabus point three of *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Id.*, 133 S.E.2d at 771. "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Finally, "[a] circuit court's entry of summary judgment is reviewed *de novo.*" *Id.* at 190, 451 S.E.2d at 756, Syl. Pt. 1. Keeping these principles in mind, we now examine whether the circuit court properly granted summary judgment.

### III.

The issue before the Court is one of first impression: whether a landlord has a duty to protect a tenant's social guest for injuries arising out of the criminal acts of a third party. Generally, the imposition of such a duty on a landlord is predicated upon a breach of contract or statute, or upon a showing of negligence. *See* 49 Am.Jur.2d *Landlord and Tenant* § 773.5 (Supp.1994). Because the Appellant in the present case maintains that imposition of a duty on the landlord arises not only under negligence principles, but also under West Virginia's warranty of habitability statute, we examine this issue utilizing both concepts respectively.

### A.

"In order to establish a *prima facie* case of negligence in West Virginia, it must

---

2. According to Ms. Meade's deposition, she twice asked "who is there," only to receive no response. She then opened the door to see who was there. In a written statement made at the emergency room, Ms. Meade stated that Eddie Fletcher used a golf club to force his way into the apartment, at which time she ran into the bedroom, where Mr. Fletcher beat and raped her.

3. In Ms. Meade's deposition testimony, she stated that the assailant was first brought to her apartment by a neighbor, Connie Wood. It was Ms. Meade's understanding that the assailant claimed to be looking for someone that lived in the apartment building and asked Ms. Wood to assist him in his search. The assailant and Ms. Wood apparently parted company at some point in time after jointly leaving Ms. Meade's apartment. The assailant later returned to Ms. Meade's door unaccompanied by the neighbor.

4. According to Ms. Jack's deposition, upon reaching Ms. Meade's apartment, she knocked on her door, and it opened. Mr. Fletcher was standing behind the apartment door when Ms. Jack walked into the apartment. Mr. Fletcher struck the Appellant with a golf club, knocking her to the floor, and continued to beat her on the back and shoulders. He then began to choke the Appellant while demanding money from her. Finally, he ordered the Appellant to go into the bedroom and to strip. Once in the bedroom, the Appellant tried to open the bedroom window in order to escape or scream for help but it was sealed shut. Mr. Fletcher did not pursue her into the bedroom, and when the Appellant sensed that he had left the apartment, she got Ms. Meade and ran out of the apartment to her car. The two then drove to a community store and called for help.

be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, *Parsley v. General Motors Acceptance Corp.,* 167 W.Va. 866, 280 S.E.2d 703 (1981). If the plaintiff fails to establish the existence of a duty of care owed by the defendant to the plaintiff, then no case of prima facie negligence can be established. *See Atkinson v. Harman,* 151 W.Va. 1025, 1033, 158 S.E.2d 169, 174 (1967). The determination of whether the plaintiff is owed a duty of care by the defendant must be rendered as a matter of law by the court. *See Parsley,* 167 W.Va. at 870, 280 S.E.2d at 706.

■ The seminal case in West Virginia regarding the concept of duty in negligence actions is *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983). Relying upon the common law as enunciated in the *Restatement (Second) of Torts* § 321 (1965), we held in *Robertson* that "[o]ne who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." 171 W.Va. at 611, 301 S.E.2d at 567, and Syl. Pt. 2. Further, this Court stated that while "foreseeability of risk is a primary consideration" in determining the scope of a duty an actor owes to another, "[b]eyond the question of foreseeability, the existence of duty also involves policy considerations underlying the core issue of the scope of the legal system's protection[,] . . . includ[ing] the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *Id.* at 612, 301 S.E.2d at 568 (citations omitted).

We recently utilized the duty concept established in *Robertson* to determine the coinciding issue of whether a landlord owes a tenant a duty to protect the tenant from injury resulting from the criminal acts of a third party in *Miller v. Whitworth,* 193 W.Va. 262, 455 S.E.2d 821 (1995). In *Whitworth,* the appellant, while living in a mobile home in the appellee's mobile home park,

discovered two men in his driveway next to his cars. Upon the appellant's discovery of these men, the men fled the scene in a car. The appellant followed the men in order to obtain a license plate number because he was unaware as to whether the men had damaged his cars. After obtaining the license plate number, the appellant began to return to his home when he realized that he was being followed by the two men. *Id.* at 264, 455 S.E.2d at 823. The appellant, rather than returning to his home, pulled into his mother-in-law's driveway.[5] *Id.* at 264–65, 455 S.E.2d at 823–24. Before the appellant could get out of his car, one of the two men smashed the driver's window of the appellant's car, shattering the glass, and injuring the appellant's eye, arm, and face. *Id.* at 264–65, 455 S.E.2d at 823–24. The appellant, along with his wife, filed suit against the landlord of the mobile home park, alleging that the landlord failed to take reasonable measures to protect the appellant from the battery. *Id.* at 264–65, 455 S.E.2d at 823–24.

In *Whitworth,* we stated that under common law "a person usually has no duty to protect others from the criminal activity of a third party because the foreseeability of risk is slight, and because of the social and economic consequences of placing such a duty on a person." *Id.* at 266, 455 S.E.2d at 825. However, we recognized that there are a couple of exceptions in which a person has an obligation to protect others from the criminal actions of another: "(1) when a person has a special relationship which gives rise to a duty to protect another person from intentional misconduct or (2) when the person's affirmative actions or omissions have exposed another to a foreseeable high risk of harm from the intentional misconduct." *Id.* at 266, 455 S.E.2d at 825, (citing *Restatement (Second) of Torts* §§ 302B cmt. e and 315).

■ In applying these exceptions to the *Whitworth* case to determine whether a duty existed between the landlord and the tenant, we found, with regard to the first exception, that pursuant to the common law, "a landlord should not have a duty to protect tenants

---

5. The appellant's mother-in-law was also a resident of the appellee's mobile home park. *See Whitworth,* 193 W.Va. at 264–65, 455 S.E.2d at 823–24.

from criminal activity merely because there is a landlord/tenant relationship." 193 W.Va. at 267, 455 S.E.2d at 826. However, under the second exception we ultimately held that:

Under the common law of torts, a landlord does not have a duty to protect a tenant from the criminal activity of a third party. However, there are circumstances which may give rise to such a duty, and these circumstances will be determined by this Court on a case-by-case basis. A landlord's general knowledge of prior unrelated incidents of criminal activity occurring in the area is not alone sufficient to impose a duty on the landlord. However, a duty will be imposed if a landlord's affirmative actions or omissions have unreasonably created or increased the risk of injury to the tenant from the criminal activity of a third party.

*Id.* at 264, 455 S.E.2d at 823, Syl. Pt. 6.

In light of our decision in *Whitworth,* we examine whether a landlord has a duty to protect a tenant's social guests from injuries resulting from the criminal conduct of a third party. It is significant to note that our decision in *Whitworth* was predicated upon the existence of a landlord/tenant relationship; hence, the problem in the present case is the lack of any such relationship. The Appellant, relying on our decision in *Lowe v. Community Investment Co.,* 119 W.Va. 663, 196 S.E. 490 (1938), maintains that a landlord owes the same duty to a tenant's guest as is owed to the tenant. In contrast, the Appellee argues that a social guest is nothing more than a licensee and that no duty exists to the licensee except to refrain from willfully or wantonly injuring him. *See Miller v. Monongahela Power Co.,* 184 W.Va. 663, 403 S.E.2d 406, *cert. denied,* 502 U.S. 863, 112 S.Ct. 186, 116 L.Ed.2d 147 (1991).

■ The Appellant misguidedly relies upon *Lowe* for the proposition that a landlord owes a social guest the same duty the landlord owes a tenant. In *Lowe,* the plaintiff was not only a member of her nephew's family, but she also lived with her nephew's family in an apartment in the building where she fell and sustained injury. 119 W.Va. at 664, 196 S.E. at 490. We held that

'[i]n the absence of a special contract, the law imposes on a landlord the duty to exercise ordinary care to maintain in reasonably safe condition, premises owned by him and used in common by different tenants. * * * A family-apartment tenancy requires of the landlord the care due the ordinary family of normal habit.'

*Id.* at 665, 196 S.E. at 490, Syl. Pt. 1 (quoting *Marsh v. Riley,* 118 W.Va. 52, 188 S.E. 748 (1936)). Accordingly, while the law enunciated in *Lowe* has limited application to a tenant's family members who normally reside with the tenant in the apartment, it does not apply to situations involving social guests.

In the present case, even though the Appellant allegedly is the tenant's cousin and often visited the tenant at the tenant's apartment, there is no evidence that the Appellant was a member of the "ordinary family of normal habit" residing in the apartment building. *See id.* Consequently, the Appellant was only a social guest of the tenant, whom, according to the record, the tenant was not even expecting to visit on the day of the attack.

■ " 'Mere permissive use of the premises, by express or implied authority ordinarily creates only a license....' " *Miller,* 184 W.Va. at 667, 403 S.E.2d at 410 (quoting Syllabus, in part, *Hamilton v. Brown,* 157 W.Va. 910, 207 S.E.2d 923 (1974)). Thus, under common law, "a social guest '... is nothing more than a licensee.' " [6] *Busch v. Gaglio,* 207 Va. 343, 346, 150 S.E.2d 110, 112 (1966); *see Totten v. More Oakland Residential Hous., Inc.,* 63 Cal.App.3d 538, 543, 134 Cal.Rptr. 29, 33 (1976) (finding that plaintiff was "simply a social guest of one of the tenants, a licensee who entered the premises upon the invitation of the tenant, not ... [the] landlord"); *see also Restatement (Second) of Torts* § 330. The rationale supporting the categorization of a social guest as a licensee is as follows:

The explanation usually given by the courts for the classification of social guests

6. "A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." *Restatement (Second) of Torts* § 330 (1965).

as licensees is that there is a common understanding that the guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the possessor does not prepare or take precautions for his own safety, or that of the members of his family.

Restatement, *supra* § 330 cmt. h(3). Since, "[w]e have consistently recognized and applied the distinctions for liability purposes among trespassers, licensees and invitees[,]" we conclude that a social guest is nothing more than a licensee. Syl. Pt. 1, *Miller*, 184 W.Va. at 665, 403 S.E.2d at 408.

▇▇▇ Regarding the duty owed by a landlord to a licensee, in *Miller*, we reaffirmed the well-established principle that " 'as to a licensee, the law does not impose upon the owner of the property an obligation to provide against dangers which arise out of the existing condition of the premises inasmuch as the licensee goes upon the premises subject to all the dangers attending such conditions.' " *Id.* at 667–68, 403 S.E.2d at 410–11 (quoting Syllabus, in part, *Hamilton*, 157 W.Va. at 910, 207 S.E.2d at 923). Moreover, "[t]he general rule is that no 'duty exists towards a mere, bare, or gratuitous licensee, or licensee by permission, except to refrain from willfully or wantonly injuring him * * *.' " *Atkinson*, 151 W.Va. at 1031, 158

S.E.2d at 174 (quoting 65 C.J.S. Negligence § 63(32)). Consequently, we hold that since a tenant's social guest is nothing more than a licensee, a landlord owes only the minimal duty of refraining from willfully or wantonly injuring the licensee.[7]

Clearly, under the facts of the present case, the landlord had no duty to protect the tenant's social guest from the criminal acts of a third party. Having concluded that the Appellant failed to establish a duty owed by the Appellee, we conclude that the lower court did not err in granting the Appellee's motion for summary judgment.

## B.

▇▇▇ Next, we address whether West Virginia Code § 37–6–30 (1978) (hereinafter also referred to as the "warranty of habitability statute"), which establish a warranty of habitability, imposes upon the landlord the duty to provide the tenant's social guest with protection from the criminal acts of a third party. The Appellant argues that the Appellee owed the Appellant a duty to warrant or guarantee the habitability of the premises where she was assaulted and such a guarantee includes maintenance of common areas in a safe and prudent condition. The Appellee asserts that West Virginia Code § 37–6–30 does not impose any such duty upon a landlord.

---

7. Based on our decision regarding the social guest's status as a licensee, we readily dismiss the Appellant's arguments that foreseeability of criminal activity by the landlord created a duty and that the landlord's breach of the Charles Town Municipal Code § E.S.–401.3, requiring a building to have illumination of at least 60 watt standard light bulbs, and § E.S.–302.4.3, requiring every window to be capable of being easily opened, established a case of prima facie negligence. First, we have already decided the foreseeability issue in *Whitworth*, where we held that "[a] landlord's general knowledge of prior unrelated incidences of criminal activity occurring in the area is not alone sufficient to impose a duty on the landlord." 193 W.Va. at 264, 455 S.E.2d at 823, Syl.Pt. 6, in part. Thus, "the foreseeability of risk is an important consideration when defining the scope of a duty. However, it would be absurd to expect landlords to protect tenants against all crime since it is foreseeable anywhere in the United States." *Id.* at 267, 455 S.E.2d at

826. Next, regarding the alleged breach of the Charles Town Municipal Code, we conclude that these municipal code provisions are similar to the warranty of habitability statute found in West Virginia Code § 37–6–30 (1978) in that the provisions were enacted to protect tenants from injuries caused by failures of the building, not to impose upon a landlord the duty to protect against the intentional criminal acts of unknown third parties. Thus, these municipal code provisions govern only those physical conditions over which a landlord has control, and were not intended to govern the intentional actions of a third party over which a landlord has absolutely no control. *See supra* text § B. Moreover, as the Appellee correctly argues, assuming arguendo, that said violations of the municipal code were established and gave rise to a duty on the part of the landlord, there is a real question as to whether a jury would have concluded that either violation was the proximate cause of the Appellant's injuries.

We note at the outset that given the Appellant's status as a licensee, there is a real question as to whether the Appellant has standing to argue a duty arising from either the statutory warranty of habitability or the implied warranty of habitability, since both of these concepts contemplate not only a landlord/tenant relationship, but also the existence of either a written or oral contractual agreement between those two parties, and neither of these are applicable to the Appellant. However, given that the Appellant raises the issue, and that it is certainly an issue which will be before us again if it is not decided, we are inclined to resolve it now.

The Appellant relies upon the proposition that West Virginia Code § 37–6–30(a)(2) and West Virginia Code § 16–16–2 (1941), when read in pari materia, establish a public policy to make housing safe by engaging in crime prevention, thereby imposing a duty on landlords to provide reasonable security measures. West Virginia Code § 37–6–30(a)(2) provides, in pertinent part, that

> [w]ith respect to residential property: (a) A landlord shall: ... (2) Maintain the leased property in a condition that meets requirements of applicable health, safety, fire and housing codes, unless the failure to meet those requirements is the fault of the tenant, a member of his family or other person on the premises with his consent....

Additionally, West Virginia Code § 16–16–2, entitled the "Housing Cooperation Law", provides:

> It has been found and declared in the 'Housing Authorities Law' ... that there exist in the State unsafe and unsanitary housing conditions and a shortage of safe and sanitary dwelling accommodations for persons of low income; *that these conditions necessitate excessive and disproportionate expenditures of public funds for crime prevention* and punishment, public health and safety, fire and accident protec-

tion, and other public services and facilities; and that the public interest requires the remedying of these conditions. It is hereby found and declared that the assistance herein provided for the remedying of the conditions set forth in the 'Housing Authorities Law' constitutes a public use and purpose and an essential governmental function for which public moneys may be spent and other aid given; that it is a proper public purpose for any state public body to aid any housing authority operating within its boundaries or jurisdiction or any housing project located therein, as the state public body derives immediate benefits and advantages from such an authority or project; and that the provisions hereinafter enacted are necessary in the public interest.

*Id.* (emphasis added).

The Appellant's argument is tenuous at best. In an analogous case, the United States Court of Appeals for the Fourth Circuit, in reviewing the Virginia Residential Landlord and Tenant Act,[8] which is similar to West Virginia's statue,[9] disagreed with the plaintiff's view that the statute required the defendant to maintain the premises so as to protect tenants from foreseeable criminal acts. *Deem v. Charles E. Smith Management, Inc.,* 799 F.2d 944, 945–46 (4th Cir. 1986). The *Deem* court found that the purpose of the statute was not to impose such a duty upon landlords by stating that

> [t]he Virginia Residential Landlord and Tenant Act does not define a 'safe condition' as used in § 55–248.13(a)(3) or 'safety' as used in § 55–248.13(a)(1). We believe, however, that those terms refer to the protection of the tenant from injuries caused by failures of the building—collapsing stairs, faulty walls, dangerous windows. This interpretation is consistent with the common law recognition of a landlord's 'duty to use ordinary care to keep [common areas] in a reasonably safe condition.'

---

**8.** As recognized in *Deem v. Charles E. Smith Management, Inc.,* 799 F.2d 944 (4th Cir.1986), Virginia Code §§ 55–248.13(a)(3) and 55–248.13(a)(1) respectively provided not only for a landlord to " 'keep all common areas shared by two or more dwelling units of the premises in a clean and safe condition[,]' " but also for a land-

lord to " 'comply with the requirements of applicable building and housing codes materially affecting health and safety.' " 799 F.2d at 945.

**9.** *See* W.Va.Code § 37–6–30(a)(3).

This interpretation still recognizes that there exist legal duties in Virginia to promote tenant safety apart from the duty to protect against third-party acts.

*Id.* at 946 (citation omitted).[10]

Similarly, there is no definition of "safety" within West Virginia's warranty of habitability statute. *See* W.Va.Code § 37–6–30. Moreover, West Virginia Code § 16–16–2 applies only to public housing, while West Virginia Code § 37–6–30 applies to both private and public housing. Further, since West Virginia Code § 16–16–2 was already in existence at the time the warranty of habitability statute was enacted, the absence of any reference to West Virginia Code § 16–16–2 within the warranty of habitability statute is indicative that the Legislature did not intend to define the term "safety" utilized in the warranty of habitability statute to include "crime prevention" as mentioned in West Virginia Code § 16–16–2. *See* W.Va.Code § 37–6–30.

■ Further, if we conclude that West Virginia Code §§ 37–6–30 and 16–16–2, when read in pari materia, do not impose a duty upon the Appellee to protect the Appellant from the criminal acts of a third party, then neither does this Court's decision in *Teller v. McCoy,* 162 W.Va. 367, 253 S.E.2d 114 (1978), which established an implied warranty of habitability when "[t]here is, in a written or oral lease of residential premises, an implied warranty that the landlord shall at the commencement of a tenancy deliver the dwelling unit and surrounding premises in a fit and habitable condition and shall thereafter maintain the leased property in such condition." *Id.,* 253 S.E.2d at 116, Syl.Pt. 1; *see Walls v. Oxford Management Co.,* 137 N.H. 653, 659–61, 633 A.2d 103, 107 (1993) ("[T]he warranty of habitability implied in residential lease agreements protects tenants against structural defects, but does not require landlords to take affirmative measures to provide security against criminal attack."). This conclusion is axiomatic since we expressly stated in *Teller* that "[t]his Court ... by implying a warranty of habitability into residential leases, intends in no way to impose upon the landlord a greater burden than that set forth by the Legislature in ... [West Virginia Code § 37–6–30]. The landlord's duty under the implied warranty and the statute are identical." 162 W.Va. at 382, 253 S.E.2d at 123–24.

■ In the present case, we hold that the Legislature did not intend for West Virginia Code § 37–6–30 to be read in pari materia with West Virginia Code § 16–16–2 to establish a duty on behalf of a landlord to protect a tenant from the criminal conduct of a third party, because nowhere within § 37–6–30 is reference made to § 16–16–2 despite the preexistence of § 16–16–2. Further, pursuant to the Fourth Circuit's decision in *Deem,* we conclude that neither the implied warranty of habitability established by this Court's decision in *Teller,*[11] nor the language of West Virginia Code § 37–6–30 concerning the landlord's obligation to "[m]aintain the leased property in a condition that meets requirements of applicable health, safety, fire and housing codes" imposes a duty upon a landlord to protect a tenant from injuries arising out of the criminal conduct of a third party.[12]

Based on the foregoing, the decision of the Circuit Court of Berkeley County granting the Appellee's summary judgment motion is hereby affirmed.

Affirmed.

---

10. Other jurisdictions have similarly held that statutes relating to the habitability of dwellings do not impart a duty upon the landlord to protect the tenants from the criminal acts of a third party. *See Cooke v. Allstate Management Corp.,* 741 F.Supp. 1205 (D.S.C.1990); *Williams v. William J. Davis, Inc.,* 275 A.2d 231 (D.C.1971); *Pippin v. Chicago Hous. Auth.,* 78 Ill.2d 204, 35 Ill.Dec. 530, 399 N.E.2d 596 (1979); *New York City Hous. Auth. v. Medlin,* 57 Misc.2d 145, 291 N.Y.S.2d 672 (1968); *Cramer v. Balcor Property Management, Inc.,* 312 S.C. 440, 441 S.E.2d 317 (1994); *but cf.* Caroline Hudson, Recent Development, *Expanding the Scope of the Implied Warranty of Habitability: A Landlord's Duty to Protect Tenants from Foreseeable Criminal Activity,* 33 Vand.L.Rev. 1493 (1980).

11. *See* 162 W.Va. at 367, 253 S.E.2d at 114.

12. Upon review of the record, we conclude that the Appellant's argument that the trial court erred in denying the Appellant's motion for Rule 11 sanctions because the Appellee's arguments were misleading and the Appellee's supporting affidavits were false to be without merit.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.