TOBIAS STAPLETON *vs.* WILLIAM HYMAN *et al,*

TOBIAS STAPLETON, JR., *p. p. a. vs.* SAME.

DECEMBER 31, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. These actions on the case for negligence were brought respectively by a father and his minor son to recover damages alleged to have resulted from personal injuries sustained by the son when he slipped and fell because of natural accumulations of ice and snow on the steps in the yard of defendants' private dwelling. The cases were tried together before a jury in the superior court and at the conclusion of the evidence for the plaintiffs the trial justice granted defendants' motion for a nonsuit in each case. They

are before us on the plaintiffs' exceptions to such rulings.

Since recovery in the father's case depends on the defendants' liability for the son's injuries, we shall treat only the son's case, unless otherwise noted.

The declaration is in two counts. The negligence relied upon in the first count is that the defendants "suffered and permitted the said walk and the said set of steps to become slippery because of accumulations of ice and snow thereon, and to remain for an unreasonable length of time in said slippery condition so that persons invited on said premises for business purposes . . . were liable to slip and fall, and injure themselves . . . ." In the second count the negligence alleged was that the defendants "negligently suffered and permitted the said walk and the said set of steps to become and to remain for an unreasonable length of time thereafter, in a slippery condition because of their negligent failure to spread ashes, sand, or other like substances on the accumulations of ice and snow thereon so that persons invited on said premises for business purposes . . . were liable to slip and fall, and injure themselves . . . ."

The evidence for the plaintiff tended to show the following facts: On January 31, 1939, the date of the accident, plaintiff was over fourteen years of age and attended junior high school. After school hours he conducted a newspaper route for himself and delivered papers to various customers at their homes, including the defendants. The latter were owners and sole occupants of certain premises on Eighth street in the city of Providence. The land where their private dwelling was located was higher than the level of the sidewalk on that street. The usual entrance to these premises was by way of six cement steps, rising immediately from the sidewalk to the top of a bank; thence along a winding flagstone walk to the two front doorsteps of the house. The walk sloped downward slightly from the house to the top of the cement steps.

The plaintiff customarily had delivered the defendants' paper by throwing it on the back porch of the house; but he

was instructed by Mrs. Hyman, on the evening before the accident, to put it at the front door thereafter or not to leave papers at all. On January 31, the date of the accident, plaintiff did not use the cement steps in entering the yard, but ran up the bank at the side of the steps. Snow and ice covered the ground and plaintiff had an ice cleat fastened underneath the instep of his right shoe. After placing the defendants' paper in the front door, as previously directed, he returned by way of the walk to the top of the cement steps. While descending the steps his left foot slipped sideways on snow-covered ice on the second step from the top, causing him to fall and to strike the back of his head and resulting in personal injuries that are the basis for the damages complained of in each case.

On January 30, the day before the accident, the weather was extremely unsettled. Snow, rain and sleet fell at different times and the temperature ranged from 36 degrees maximum to 21 degrees minimum, with a mean temperature of 28 degrees. Apparently some two and two-tenths inches of snow had fallen on the ground. On January 31, the day of the accident, there were intermittent snow showers from early morning and it snowed continually between the hours of 3:50 and 9 p. m. The accident took place about 5:30 p. m. The temperature for that day ranged between 21 degrees maximum and 15 degrees minimum, with a mean temperature of 18 degrees. Although it snowed continually during the period between 3:50 and 9 p. m., the depth of snowfall was not measurable. It was called "a trace" but it covered the ground and obscured the ice on the steps. According to the plaintiff, it was "kind of dark" or "shadowy" at the cement steps. The street lights were on and one of them, about 35 feet away, threw its light on the steps from an angle.

No evidence appeared that either of the defendants was at home during the day of the accident. There is evidence that they were not at home as late as 10 or 10:30 p. m. that night when the father called to talk with them and to examine the premises. When the snow was brushed off the ice

by the plaintiff at the time of his fall, there was no sand or ashes on the ice. The same condition prevailed at 10:30 p. m. when his father examined the steps. There was also evidence of the extent of the son's injuries and of the other loss and damage alleged to have been sustained by each plaintiff.

The case is of novel impression in this state. Counsel have cited no reported case like it in any other jurisdiction and we have found none. They agree, however, that the law governing a landlord and tenant relationship is not controlling here; and no master and servant relationship is involved.

The plaintiff contends that the evidence shows that he was an invitee of the defendants for business purposes; that the steps were unsafe and dangerous because of accumulated ice and snow; that the defendants knew or by the exercise of reasonable care should have known of such dangerous condition and therefore owed to the plaintiff a duty of maintaining the steps in a reasonably safe condition for the purposes of the invitation; and that they failed to do anything to render the steps reasonably safe for passage or to prevent injury to the plaintiff therefrom. In other words, plaintiff relies on the defendants' alleged violation of a duty which he contends is imposed at common law upon invitors, to use reasonable care to keep safe, for the purposes of the invitation, that part of the premises to which the plaintiff is expressly or impliedly invited.

The defendants, on the other hand, contend that the plaintiff was more precisely a "business visitor", as distinguished from a "business patron"; that a duty was owed to such visitor by the possessor of land "if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the

harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility." 2 Restatement, Torts § 343; § 332.

They argue substantially that the evidence failed to show the violation of any duty reasonably owed by them to the plaintiff in the circumstances existing at the time of this accident, and further that the evidence shows that the plaintiff was guilty of contributory negligence. The trial justice, in granting the defendants' motion for a nonsuit, agreed with these contentions.

Since the case was tried and argued by both counsel on the theory that the plaintiff was an invitee of some kind, we shall assume, without deciding, that he was on the defendants' premises as an invitee and not as a mere licensee. Upon that assumption, the defendants would owe to the plaintiff at common law the duty to use reasonable care to maintain, in a condition that was reasonably safe for the purposes of the invitation, that portion of the premises to be used by the plaintiff. See *Reddington* v. *Getchell,* 40 R. I. 463. However, the defendants, if invitors, would not be insurers of the plaintiff's safety; nor would they be held to the exercise of *extraordinary* care to discover and to remove such a possible dangerous condition on the premises. On the contrary, they would be bound to exercise only that care which an ordinary prudent person in like circumstances would be expected to exercise toward such an invitee.

The decisive question here is whether the evidence, viewed most favorably to the plaintiff, would reasonably support a conclusion by the jury that the defendants were guilty of actionable negligence in the existing circumstances. In our opinion, if defendants were invitors the evidence fails, at least in one vital particular, to make out a *prima facie* case of actionable negligence against them.

As to the existing condition on the steps, the evidence is not extensive but we may assume that it was sufficient to describe a dangerous condition as alleged. There was no allegation in the declaration, however, that such condition

resulted from defective construction or from any artificial cause; and there was no evidence to support such a claim. The alleged dangerous condition resulted solely from natural causes, that is, accumulations of snow and ice, and by nature it was clearly a temporary condition to which defendants never contributed by active negligence. There is no evidence that the existence of such condition was actually known to the defendants at any time prior to the accident or that any weather conditions had ever before made the steps similarly dangerous to their knowledge or notice.

The plaintiff, in order to charge defendants with constructive notice of such condition, was forced to rely on an inference that they, if exercising the care expected of an ordinary prudent possessor of land in like circumstances, should have discovered it in time to remove the alleged danger or to warn the plaintiff thereof. But there is no evidence as to when this condition became dangerous as such, or how long it had so remained prior to the accident. In the absence thereof the jury could not reasonably determine whether the alleged condition had existed long enough for the defendants, if exercising reasonable care, to have discovered it and to have taken some measures to remove the danger or to warn the plaintiff thereof.

The plaintiff contends, however, that the defendants were bound to take notice that the temperature on the day of the accident had remained below freezing and therefore that they must have known that such a condition would result. But evidence merely of temperatures that might be capable of producing ice in general would not necessarily establish the existence of the particular condition and resulting danger as alleged. To charge these defendants in the existing circumstances with constructive notice of the alleged dangerous condition and with the violation of a duty as urged by the plaintiff would be substantially to exact the exercise by them of *extraordinary* care, if not to make them, in effect, almost the insurers of the plaintiff's safety.

We are of the opinion that there was no evidence upon

which the jury could reasonably find that the defendants knew, or by the exercise of reasonable care should have known, of the alleged dangerous condition *as such* for a long enough period *before* the accident to charge them with the duty of removing the danger or of warning the plaintiff thereof. For this reason it becomes unnecessary to decide whether the trial justice was also correct in concluding that the evidence showed the plaintiff to be guilty of contributory negligence as a matter of law.

The plaintiff's exception in each case is overruled, and each case is remitted to the superior court for entry of judgment on the nonsuit.

*William A. Gunning,* for plaintiffs.

*Henry M. Boss, Francis W. Conlan,* for defendants.