JOSEPH NOTTIE *vs.* NICHOLAS PICCHIONE *et al.*

MAY 11, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This action of trespass on the case for negligence was tried before a justice of the superior court sitting with a jury, and at the close of the evidence he granted defendants' motion for a directed verdict. The case is before us on plaintiff's exception to that ruling.

The defendants, husband and wife, were the owners and occupants of premises at 495 Lloyd avenue, in the city of Providence. The door of defendants' house was some nine to twelve feet from the property line, and access thereto was had over a concrete walk, about three feet wide, which, starting level with the inner edge of the sidewalk, ran between lawns that had been recently seeded. Two garden stakes, one on each side of the walk, were implanted in the grass close to the sidewalk.

The accident happened about two o'clock in the after-

noon of March 11, 1946, which was a cloudy day. The plaintiff, who was employed as driver of a small truck and deliveryman for a local department store, testified that, having a package to deliver at defendants' address, he stopped the truck about where that number would be; that, shortly after he entered the walk looking for the number on the house, he tripped over something which threw him forward to the ground; and that, in order to protect his face, he landed with the palms of both hands on the walk. Plaintiff's uncontradicted medical evidence was that he sustained severe injuries to both elbow joints.

The plaintiff further testified that while on the ground he made an outcry and then turned to see what had caused his fall. At that time he saw a rope, an inch or so above the ground, stretched across the walk and tied at each end to the above-mentioned stakes. He described the rope as a "dirty gray" about the same color as the walk. His outcry brought Mrs. Picchione immediately to his assistance. Plaintiff's testimony on this point is as follows: "Q. Tell us whether or not you immediately got up? What happened after you fell? A. After I fell and gave a little yell, I laid on the ground and a couple of seconds later, Mrs. Picchione opened the door and came out and she said: 'Oh, my God! I was afraid someone might fall over that rope.' "

The defendants in their evidence denied all knowledge that a rope, or heavy string as they called it, was stretched across the walk from stake to stake. Furthermore, Mrs. Picchione denied making the above-quoted statement attributed to her by the plaintiff. However, there was evidence from Mr. Picchione that, when he arrived home shortly after the accident, he found ends of brown string attached to the top of each stake, the string being about eighteen inches to two feet above the ground. He also testified that he pulled up the stakes with the attached string and threw them away. Some string allegedly similar to that

96

removed from the stakes was introduced in evidence by the defendants.

There was error in granting defendants' motion for a directed verdict. It is clear from the short statement the trial justice made in connection with his decision that he failed to observe our firmly-established rule that in passing on a motion for a directed verdict he is bound to view the evidence most favorably to the adverse party and to draw from such evidence all reasonable inferences in favor of that party. A verdict should not be directed for a defendant if on any reasonable view of the evidence the plaintiff is entitled to recover. Furthermore, the weight of the evidence or the credibility of witnesses is not for the trial justice to consider on such a motion.

In the instant case the trial justice plainly drew an inference of fact adverse to the plaintiff when he stated that since plaintiff's arms were broken at the elbows such injury did not sustain plaintiff's testimony "to the effect that he was walking up the walk." Moreover, he completely overlooked the alleged statement by Mrs. Picchione immediately after the accident and while the plaintiff was still on the ground, which statement, when viewed most favorably to the plaintiff, was some evidence for the jury to consider as to whether the defendants had reasonable notice of the alleged dangerous condition, if they found it to exist.

At the time of the accident the plaintiff was on defendants' premises as a business invitee and not as a mere licensee. As such invitee, the defendants owed him the duty to use reasonable care to maintain, in a condition that was reasonably safe for the purposes of the invitation, that portion of the premises to be used by him. In other words, the defendants were bound to exercise that care which an ordinary prudent person in like circumstances would be expected to exercise toward such an invitee. *Stapleton* v. *Hyman,* 69 R. I. 466; *Reddington* v. *Getchell,* 40 R. I. 463.

The defendants contend that the alleged statement of Mrs. Picchione, even if believed, was of no probative force

in the circumstances of this case. They treat that statement as a mere admission which the plaintiff secured from her for the purpose of establishing negligence. To support this contention they cite *Binewicz* v. *Haglin*, 103 Minn. 297, and quote extensively from that opinion but without stating the facts upon which it is based. Our examination of that case shows that it is clearly distinguishable from the case at bar.

In the *Binewicz* case, the plaintiff, an ordinary laborer, was last seen at work on a building, standing on some boards. Some time later he was found in the basement seriously injured. No eye witness was produced. The plaintiff was called as a witness, but his memory had been destroyed. His wife testified without contradiction that the defendant, who had made some weekly payments to her and promised future assistance, said to her: "Don't cry, I know it was my fault, not your man's. I know your man was hurt bad. That was not your man's fault." The court, although sympathetic towards the plaintiff, sustained a directed verdict for the defendant, holding that such admission was legally insufficient by itself to establish negligence. We call attention to the fact that, at page 302 of the opinion, the court stated that the admission under consideration "bore no resemblance to a declaration admissible as a part of the res gestae." This important statement was apparently overlooked by the defendants here. In the instant case Mrs. Picchione's exclamation, if believed, was a part of the *res gestae* and not a mere admission. It was an instinctive, spontaneous statement made by her so close to the accident as to be substantially contemporaneous with and descriptive of the occurrence. *State* v. *Murphy*, 16 R. I. 528; *Zannelle* v. *Pettine*, 51 R. I. 359.

Viewing the evidence most favorably to the plaintiff, we are of the opinion that it presented material issues for the jury to determine, at least in the first instance. These issues were whether there existed a condition as alleged and if so whether the defendants knew, or by the exercise

of reasonable care should have known, of the alleged dangerous condition of the walk for a long enough period *before* the accident to charge them with notice and thereby impose upon them the duty of removing the danger or of warning the plaintiff thereof; and also, if the defendants were chargeable with such duty, whether the plaintiff was in the exercise of due care at the time of the accident.

The plaintiff's exception is sustained, and the case is remitted to the superior court for a new trial.

*Coleman B. Zimmerman, Alfred D'Amario,* for plaintiff.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for defendants.