LaPLACA et al., Appellants,

v.

BRUNSWICK AMBASSADOR LANES, Appellee.

[Cite as *LaPlaca v. Brunswick Ambassador Lanes* (1988), 61 Ohio App.3d 598.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 54654.

Decided Dec. 12, 1988.

*Richard C. Talbert* and *Tim L. Collins*, for appellants.

*Ernest W. Auciello, Jr.*, for appellee.

PRYATEL, Chief Justice.

Plaintiffs–appellants Betty LaPlaca and Joseph LaPlaca appeal from a summary judgment granted in favor of defendant-appellee Brunswick Ambassador Lanes.

On August 19, 1986, Betty LaPlaca filed a personal injury complaint. Betty LaPlaca sought to recover damages arising out of a fall which allegedly occurred while she was bowling at Brunswick Ambassador Lanes. In an amended complaint, LaPlaca's husband, Joseph, sued to recover for loss of his

wife's services and consortium. Defendant filed an answer denying plaintiffs' allegation and asserting several defenses.

Defendant filed a motion for summary judgment and based it on Betty LaPlaca's deposition. Plaintiffs filed a brief in opposition to defendant's motion for summary judgment based on Betty LaPlaca's affidavit.

According to LaPlaca's deposition, she participated in a bowling league that met once a week at defendant's facility. On March 28, 1985, while using lane 38, LaPlaca fell as a result of her foot sticking on an unidentified substance in the lane. On the day in question, LaPlaca had bowled three frames in that lane prior to her fall. LaPlaca had bowled at the facility approximately thirty or forty times before the date of her fall.

Prior to the incident, LaPlaca had noticed some sticking on lane 38:

"Q. *How many times before the date of the accident had you experienced sticking on the lanes?*

"A. I don't recall.

"Q. A dozen?

"A. It's hard—it's hard to say because I mean, you know, depending.

"Q. Once? Do you have any idea how many times, once, twice, a dozen, half dozen? Just a ballpark figure to give me an idea.

"A. *I would say about a dozen times.*

" * * *

"Q. *On that date had anyone experienced a sticking problem prior to your fall on lane 38?*

"A. Yes, there was.

"Q. *Did you experience a sticking problem on lane 38 prior to your fall on that date?*

"A. I don't understand what you are saying.

"Q. On the date of your accident did you experience a sticking problem on lane 38 prior to your fall?

"A. I'm trying to think. I did stick, but when I did it was a—how can I say it? It was just like your foot just goes, but nothing to—you know, at the time—

"Q. On lane 38?

"A. Yes.

"Q. *On lane 38 prior to your fall on that date, you did have some sticking?*

"A. . *Yes, we did.*

"Q. When you say 'we' do you mean yourself and the other people that were bowling on that lane?

"A. Yes.

"Q. *And did they advise you that they were also experiencing some sticking on lane 38 that day?*

"A. Oh, God, it's hard to recall that. I mean, they did, *somebody did say something to me,* but I didn't take it, you know,—" (Emphasis added.)

LaPlaca had also observed others experience the stickiness:

"Q. Did you ever witness anyone fall at the lanes due to a sticking problem?

"A. No, but I've seen them stick, get stuck, but I've never seen them fall.

"Q. *So you had witnessed other people stick besides yourself?*

"A. *Yes.*" (Emphasis added.)

In her affidavit attached to the supplemental brief in opposition to the motion for summary judgment, LaPlaca admits she knew of the presence of the sticky substance on lane 38; however, LaPlaca attempts to clarify the extent to which she realized a hazard existed at the defendant's premises:

"3. I have used lane number 38, and other lanes, at Brunswick Ambassador Lanes in Bedford, Ohio on numerous occasions. During some of those occasions prior to and including March 28, 1985 I have experienced a slight tacky condition in the approach to the foul line, and I have observed others who have experienced a similar slight amount of tackiness.

"4. Brunswick Ambassador Lanes has been informed as to the slight tacky condition through the officers of the women's bowling league which I belonged to.

"5. I could not see, smell or otherwise detect that the kind of condition I experienced on March 28, 1988 [*sic*] existed on the bowling alleys of Brunswick Ambassador Lanes on that date or at any time prior to March 28, 1985.

"6. When I made my approach in lane number 38 at approximately 9:30 a.m. on March 28, 1985 in Brunswick Ambassador Lanes' premises I could not see or otherwise detect the condition which caused my shoe to adhere to the bowling alley floor before I experienced that adhesion. I did not expect to have my shoe stick to the bowling alley floor as it did on the above date and time.

"7. If I had known, or expected, the extreme tackiness which I experienced on March 28, 1985 I would not have used the lane in question.

"8. I had no way of anticipating the seriousness of the problem with lane number 38 on March 28, 1985 before my foot adhered to the floor of lane number 38 and became immobilized at approximately 9:30 a.m."

The trial court granted defendant's summary judgment motion and plaintiffs' timely appeal.

"ASSIGNMENT OF ERROR:

"The trial court erred in granting summary judgment in favor of the defendant in that genuine issues of material fact exist in the record which were before the trial court, and since defendant was not entitled to judgment as a matter of law."

Appellants contend that there are genuine issues of material fact which preclude summary judgment.

Civ.R. 56(C) provides the procedure for summary judgment. The rule provides in pertinent part:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, * * * affidavits, * * * in the pending case, * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence * * * and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence * * * construed most strongly in his favor. * * * "

Viewing the evidence most strongly in favor of the party against whom the motion is directed, as Civ.R. 56(C) requires, we conclude that a number of disputed questions of material fact remain; therefore, the trial court improperly granted appellee's motion for a summary judgment.

■ Appellee was not an insurer of LaPlaca's safety but owed to LaPlaca the duty of ordinary care to guard against danger while she was a patron; thus, appellee was required to render its premises reasonably safe. *Gedra v. Dallmer* (1950), 153 Ohio St. 258, 262, 41 O.O. 274, 275–276, 91 N.E.2d 256, 258–259.

■ Appellee maintains that LaPlaca's knowledge of the danger obviated its duty to her. Appellee cites *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, as dispositive of the issue. In *Sidle,* the Supreme Court of Ohio held that an occupier of premises owes no duty to protect a business invitee against dangers which are known to the invitee.

When *Sidle* was decided, a plaintiff's contributory negligence completely barred his right to recovery. In 1980, Ohio enacted a comparative negligence statute, R.C. 2315.19.[1] At the time the cause of action accrued, this statute provided in part:

"(A)(1) In negligence actions, the contributory negligence of a person does not bar the person or his legal representative from recovering damages that have directly and proximately resulted from the negligence of one or more other persons, if the contributory negligence of the person bringing the action was no greater than the combined negligence of all other persons from whom recovery is sought. However, any damages recoverable by the person bringing the action shall be diminished by an amount that is proportionately equal to the percentage of negligence, which percentage is determined pursuant to division (B) of this section. * * *" See 138 Ohio Laws, Part I, 594–595.

Thus, *Sidle* is not applicable here.

Therefore, questions of material fact include whether appellee maintained its business premises in a reasonably safe manner; were its customers unnecessarily or unreasonably exposed to danger, and did appellee know of the danger and, hence, have a duty to warn its customers?

LaPlaca has raised sufficient questions to require resolution by the finders of fact. Accordingly, the judgment is reversed and the cause is remanded.

*Judgment accordingly.*

PARRINO, J., concurs.

NAHRA, J., concurs separately.

THOMAS J. PARRINO, J., of the Eighth Appellate District, sitting by assignment.

NAHRA, Judge, concurring.

I concur on the basis that a genuine issue of material fact exists as to whether appellant was aware of the potential risk based on appellant's affidavit testimony. However, it is still incumbent upon appellant to establish negligence on appellee's part.

I do not agree that *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, is no longer applicable in light of the enactment of R.C.

---

1. Effective January 5, 1988 (see 142 Ohio Laws, Part I, 1661, 1686–1689), R.C. 2315.19 was amended to codify that the defense of assumption of the risk is merged with the defense of contributory negligence as found by the Supreme Court in *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780.

2315.19. See, *e.g., Beynon v. K–Mart Corp.* (C.A.6, 1988), 839 F.2d 283; *Lopatkovich v. Tiffin* (1986), 28 Ohio St.3d 204, 28 OBR 290, 503 N.E.2d 154; *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474; *Frajt v. Goodwill Industries of Greater Cleveland* (1986), 33 Ohio App.3d 92, 514 N.E.2d 719. *Sidle* is simply inapplicable to the facts of the instant case because the danger herein was not obvious and apparent.