487 S.E.2d 295

**Gaynelle SELF, Plaintiff Below, Appellant,**

v.

**Mayme QUEEN, Defendant Below, Appellee.**

**No. 23348.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1997.

Decided Feb. 24, 1997.

Clifford F. Kinney, Jr., Hunt & Barber, L.C., Charleston, for Appellant.

David A. Sims and Debra Tedeschi Hall, Sims and Hall, Elkins, for Appellee.

PER CURIAM:

The appellant in this proceeding, Gaynelle Self, claims that the Circuit Court of Wayne County erred in awarding her mother, the appellee, Mayme Queen, summary judgment in this premises liability action. In awarding summary judgment, the circuit court held that the appellant, who was injured in a fall on her mother's property, occupied the status of a licensee at the time of the fall and that her mother was not guilty of willful or wanton misconduct in the maintenance of the premises on which the fall occurred. The court concluded that under our law a property owner is responsible to a licensee only for injuries arising out of willful or wanton misconduct, and the appellant, as a matter of law, was not entitled to recover. On appeal, the appellant claims that the circuit court erred in finding that she was a licensee, rather than an invitee to whom a higher duty of care is owed, and that as a consequence, the circuit court's granting of summary judgment was improper. The appellant also urges this Court to change the established law in this state relating to liability involving invitees and licensees.

After reviewing the issues presented, as well as the facts of this case, this Court cannot conclude that the trial court erred in holding that the appellant was a licensee, and the Court declines to alter the established law relating to licensees and invitees. As a consequence, the Court affirms the judgment of the Circuit Court of Wayne County.

The facts in this case do not appear to be substantially in dispute. At the time of the incident giving rise to the action, Mayme Queen, the mother of the appellant, was a resident of Wayne County, West Virginia, and the appellant, Gaynelle Self, was a resident of Michigan. Prior to the incident Gaynelle Self had traveled from Michigan to Wayne County to visit her mother and other relatives and friends in the Wayne County area. The purpose of this visit was clearly social.

On the day of the incident the appellant who was at a sister's house next to the house of their mother, agreed to purchase some milk for her mother upon leaving the sister's house. When she did leave, and as she was entering a car, her mother called out to her to come and get money for the milk. The appellant exited the car and started toward

her mother's house across her mother's yard. In so doing she stepped into a deep hole and fell and broke her ankle. There is evidence suggesting that the appellant's mother knew of the hole, but there is no evidence that the mother intentionally concealed the existence of the hole although it was apparently hidden by long grass which had grown up around it.

The appellant sued her mother for the injuries sustained in the fall, but prior to trial, the attorney for the appellant's mother moved for summary judgment. He claimed that the appellant was a mere licensee at the time of the fall, and that the duty which her mother owed her, was only a duty not to act willfully or wantonly to cause harm to her. This duty is substantially different from the much greater duty owed an invitee.

The circuit court, after hearing arguments, concluded that the appellant was in fact a licensee, rather than an invitee, of her mother. The court also concluded that since the evidence failed to show that the appellant's mother had acted willfully or wantonly to cause injury to the appellant, the evidence could not support a recovery for the appellant. As a consequence, the trial court entered summary judgment for the appellant's mother.

In the present case, the appellant essentially argues that she was an invitee rather than a licensee, and that the trial court erred in granting summary judgment.

■ In syllabus point 4 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court indicated that:

> Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

■ Going beyond this, to approach the deeper legal questions in this case, the Court notes that whether a party injured on the premises of another is a licensee or invitee is

significant under the law of West Virginia, because the law imposes different duties of care on possessors of premises with regard to licensees and invitees. As stated in *Cavender v. Fouty,* 195 W.Va. 94, 98, 464 S.E.2d 736, 740 (1995):

> The duty owed to an invitee was outlined in Syl. pt. 2 of *Morgan v. Price [*151 W.Va. 158, 150 S.E.2d 897 (1966)*]* where we said: "The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition." Point 2 Syllabus, *Burdette v. Burdette,* 147 W.Va. 313 [127 S.E.2d 249] ... However, in the case of a licensee, that is a person on another's property with expressed or implied permission, the property owner does not have to correct the dangers arising from existing conditions. In the Syllabus of *Hamilton v. Brown,* ... [157 W.Va. 910, 207 S.E.2d 923 (1974)] we said: "Mere permissive use of the premises, by express or implied authority ordinarily creates only a license, and as to a licensee, the law does not impose upon the owner of the property an obligation to provide against dangers which arise out of the existing condition of the premises inasmuch as the licensee goes upon the premises subject to all the dangers attending such conditions." *See also Miller v. Monongahela Power Co.,* 184 W.Va. at 667–68, 403 S.E.2d at 410–11.

■ Recently in *Jack v. Fritts,* 193 W.Va. 494, 457 S.E.2d 431 (1995), this court recognized that a social guest was nothing more than a licensee. This is consistent with a widely recognized rule in the United States, for as stated in W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 60, at 414 (5th ed.1984):

> "[N]early all of the decisions are agreed that a social guest, however cordially he may have been invited and urged to come, is not in law an invitee—a distinction which has puzzled generations of law students, and even some lawyers and judges. The guest is legally nothing more than a licensee, to whom the possessor owes no duty

of inspection nor affirmative care to make the premises safe for his visit. The fact that in the course of his visit he gratuitously performs incidental services for his host, such as picking fruit, washing the dishes, or feeding the dog, does not in most states improve his legal position." (Notes omitted).

■ In the present case, even though the appellant was ostensibly traversing her mother's yard to help her mother procure milk, the overall context in which this was done was that of a social guest, and it appears to this Court, as it apparently appeared to the circuit court, that what the appellant was actually doing was gratuitously performing an incidental service for her hostess, her mother. In effect, this Court believes that, given the law cited, the trial court properly concluded that the appellant was a licensee rather than an invitee.

■ Further, since the record fails to show that the appellant's mother acted willfully or wantonly, and since no fair reading of the record suggests that such might be proven, the Court concludes that the appellant has failed to make a sufficient showing of the essential elements of her case to merit going forward with trial and that the trial court properly entered summary judgment.

The Court notes that the appellant makes an extraordinary proposal and urges us to abandon well-settled and long-established common law relating to the circumstances of this case, and to revisit the common law rule which now defines the duty an owner/possessor of premises owes to persons upon those premises. Presently, the scope of the duty owed a visitor by an owner/possessor of property is determined by the status of that visitor while on the premises.

■ Since we left the Mother State we have always recognized in our jurisprudence the distinction between invitees, licensees, and trespassers. This distinction is very specific and provides us with a precise, definite gauge by which to measure the extent of the duty of care owed the visitor and clearly

defines the precaution to be taken. The standard is precise and not vague. The appellant would have us depart from the precise, detailed rule, abolish the invitee/licensee distinction, and adopt a single reasonable care standard. In other words, change the rule from specific to vague. This is not the policy of the law. The law always favors the more exact and specific rule as opposed to the vague and indefinite.

Oliver Wendell Holmes, Jr., writing in his 1881 book *The Common Law,* in the section "Trespass and Negligence," at page 112 states:

From the time of Alfred to the present day, statutes and decisions have busied themselves with defining the precautions to be taken in certain familiar cases; that is, with substituting for the vague test of the care exercised by a prudent man, a precise one of specific acts or omissions. The fundamental thought is still the same, that the way prescribed is that in which prudent men are in the habit of acting, or else is one laid down for cases where prudent men might otherwise be in doubt.

And further, at page 111, with very nice Nineteenth Century language, Holmes states:

Finally, any legal standard must, in theory, be capable of being known. When a man has to pay damages, he is supposed to have broken the law, and he is further supposed to have known what the law was.

If, now, the ordinary liabilities in tort arise from failure to comply with fixed and uniform standards of external conduct, which every man is presumed and required to know, it is obvious that it ought to be possible, sooner or later, to formulate these standards at least to some extent, and that to do so must at last be the business of the court. It is equally clear that the featureless generality, that the defendant was bound to use such care as a prudent man would do under the circumstances, ought to be continually giving place to the specific one, that he was bound to use this or that precaution under these

or those circumstances. The standard which the defendant was bound to come up to was a standard of specific acts or omissions, with reference to the specific circumstances in which he found himself. If in the whole department of unintentional wrongs the courts arrived at no further utterance than the question of negligence, and left every case, without rudder or compass, to the jury, they would simply confess their inability to state a very large part of the law which they required the defendant to know, ·and would assert, by implication, that nothing could be learned by experience. But neither courts nor legislatures have ever stopped at that point.

We believe that to revise the rule, to depart from our specific and definite standard, and to adopt a vague single reasonable care standard, which Holmes calls a "featureless generality" would in effect, leave "every case, without rudder or compass, to the jury." Oliver Wendell Holmes, Jr., *The Common Law* (1881). The rule has served us well from the time of Alfred to the present. We see no compelling reason for change now and will keep the rudder and the compass.

For the reasons stated, the judgment of the Circuit Court of Wayne County is affirmed.

Affirmed.

STARCHER, J., concurs, and files a concurring opinion in which WORKMAN, C.J., joins.

STARCHER, Justice, concurring.

I agree with the conclusion reached by the majority in this case, but for an entirely different reason: the novel arguments raised by the appellant on appeal were never raised below. This Court will usually decline to address a legal position when it was not addressed below, and more particularly, it will decline to address a legal principle when the facts fail to implicate the principle. The appellant asks on appeal that in premises liability cases we dispense with the distinction between licensees, invitees, and trespassers. As much as I might agree with this proposition, I am compelled to accept the majority's position that this is not the right case for taking that step.

That being said, the majority opinion's assertion [1] that our law "*always* favors the more exact and specific rule as opposed to the vague and indefinite," 199 W.Va. at 640, 487 S.E.2d at 298 [emphasis added], is simply wrong. When Justice Oliver Wendell Holmes spoke of "fixed and uniform standards of external conduct" in his 1881 lecture series (now found in *The Common Law* (1909)), we must keep in mind that Holmes was writing in a time when the harsh rules of contributory negligence, assumption of the risk, and the fellow-servant doctrine were taking root in the law. These rules, which were once new, shiny principles designed to immunize entrepreneurs and businesses from liability at a time of early industrialization, have since weathered and fallen in the face of time, reason, and a growing intolerance for human suffering that has accompanied the post-industrial era. *See Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979) (abolishing contributory negligence rule and adopting modified comparative negligence principles); *King v. Kayak Mfg. Corp.*, 182 W.Va. 276, 387 S.E.2d 511 (1989) (abolishing assumption of risk and adopting comparative assumption of risk); *W.Va.Code*, 23–1–1, *et seq.* (abrogating fellow-servant doctrine by providing workers' compensation benefits to workers injured in the course of and as a result of their employment, including injuries by fellow employees). Contrary to extensive precedents from the recent past, the majority opinion erroneously suggests that this Court should always rely upon such weather-beaten "specific and

---

1. Practitioners should keep in mind that the Court's statements appear in a *per curiam* opinion. We have repeatedly said that *per curiam* opinions are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus points is merely *obiter dicta*. *See, Graf v. West Virginia University*, 189 W.Va. 214, 429 S.E.2d 496 (1992); *Lieving v. Hadley*, 188 W.Va. 197, 423 S.E.2d 600 (1992).

definite standard[s]" and never "adopt a single reasonable care standard, which Holmes calls a 'featureless generality.'" 199 W.Va. at 640–41, 487 S.E.2d at 298–99.

Unfortunately, rules and ready-made generalizations usually have nothing to do with the real world that exists outside of a courtroom. Holmes himself suggested that courts should never blindly follow precedent when he said,

> It is revolting to have no better reason for a rule of law than that ... it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.

O.W. Holmes, *The Path of the Law*, 10 Harv. L.Rev. 457, 469 (1897). A successor to Holmes, Justice Benjamin Cardozo, entreated courts to abandon artificial rules and precedents that have nothing to do with the way people order their affairs. Justice Cardozo stated:

> ... I am ready to concede that the rule of adherence to precedent, though it ought not to be abandoned, ought to be in some degree relaxed. I think that when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment.... There should be greater readiness to abandon an untenable position *when the rule to be discarded may not reasonably be supposed to have determined the conduct of the litigants,* and particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years.

B. Cardozo, *The Nature of the Judicial Process,* 150–151 (Yale 1949) (emphasis added). We have often turned to Justice Cardozo's theories when forsaking cumbersome precedents and legal theories that are known only to lawyers and judges, and embracing concepts which are in accord with an evolving sense of justice. *See, e.g., Morningstar v. Black and Decker Mfg. Co.,* 162 W.Va. 857, 871, 253 S.E.2d 666, 674 (1979) (adopting principles of strict liability in product defect cases); *Bradley v. Appalachian Power Co.,* 163 W.Va. at 347, 256 S.E.2d at 887 (abandoning contributory negligence and adopting comparative negligence principles).

Applying these principles to the instant case, rarely are the distinctions between licensee, invitee and trespasser proven "to have determined the conduct of the litigants." A licensee is a person who enters onto property with permission; an invitee enters onto property with permission for some pecuniary or business benefit to the landowner; and a trespasser enters on land without any permission whatsoever. A landowner owes no duty to a licensee or trespasser, but owes a duty of due care to an invitee. I agree that a landowner doesn't owe a trespasser the time of day. I have a right to assume people will obey the law and not trespass onto my land; therefore, I don't owe a trespasser any duty whatsoever (except to not intentionally cause harm).

But I fail to understand why the invitee-licensee distinction should continue to exist, primarily because I don't think landowners manage their property with these common-law status distinctions in mind. The invitee-licensee rule creates the fictional premise that a social visitor to a home walks across a lawn with full knowledge that they do so at their own peril, but a babysitter,[2] mail carrier,[3] taxi driver,[4] garbage collector,[5] delivery-

---

2. *Lloyd v. Weimert,* 146 Ind.App. 666, 257 N.E.2d 851 (1970) (babysitter tripped over tarpaulin on stairs); *Powell v. Vracin,* 150 Cal.App.2d 454, 310 P.2d 27 (1957) (babysitter fell walking out open door where homeowner had failed to construct steps).

3. *Capener v. Duin,* 173 N.W.2d 80 (Iowa 1969) (mail carrier slipped on icy porch steps).

4. *Markee v. Turner,* 140 Conn. 701, 103 A.2d 533 (1954) (taxi driver slipped on unlit, icy porch while going to knock on customer's door).

5. *Toomey v. Sanborn,* 146 Mass. 28, 14 N.E. 921 (1888)(city collector of "ashes and offal" fell in hole when landowner removed plank from walkway).

man,[6] paperboy,[7] or meter reader[8] walking in the social visitor's footsteps may feel safe in the knowledge that he or she can recover from the homeowner their damages for any negligently caused injury.[9]

For example, if I have a yard sale to get rid of junk accumulating in my garage, and a neighbor comes into my garage to make a purchase, the neighbor is a business invitee. I owe the neighbor a duty of due care, and if the neighbor, exercising due care, gets hurt tripping over dangerous tools I carelessly forgot to remove from the walkway, I may be held responsible. But if that same neighbor is coming intending to visit me, as he regularly does upon my standing invitation, and trips over the same tools, I won't be liable because he is a licensee and I owe him no duty. As a licensee, he comes "upon the premises subject to all the dangers attending such [existing] conditions." *Cavender v. Fouty,* 195 W.Va. 94, 98, 464 S.E.2d 736, 740 (1995) (*quoting* Syllabus, *Hamilton v. Brown,* 157 W.Va. 910, 207 S.E.2d 923 (1974)). This is silly. No one declines to clean the garage, shovel snow off a sidewalk, or fill in potholes in a yard with the licensee-invitee rule in mind.

The majority breezes through the appellant's argument without any discussion, saying simply:

> [T]he appellant makes an extraordinary proposal and urges us to abandon well-settled and long-established common law relating to the circumstances of this case, and to revisit the common law rule which now defines the duty an owner/possessor of premises owes to persons upon those premises.... The appellant would have us depart from the precise, detailed rule, abolish the invitee/licensee distinction, and adopt a single reasonable care standard.

199 W.Va. at 640–41, 487 S.E.2d at 298–99. This brief discussion of the appellant's argument wholly ignores a crucial point: *at least twenty-five of our sister states plus the District of Columbia have already abandoned the licensee-invitee status distinction in premises law cases.* The United States Supreme Court has similarly rejected the distinction in admiralty cases.[10]

Twelve jurisdictions have concluded that reasonable care by a premises owner towards others is determined on the basis of what is foreseeable, thereby abolishing all invitee-licensee-trespasser restrictions.[11] Twelve

**6.** *Downs v. Cammarano,* 207 Pa.Super. 478, 218 A.2d 604 (1966) (man delivering dry cleaning slipped and fell on icy porch steps); *Nottie v. Picchione,* 74 R.I. 93, 59 A.2d 177 (1948) (delivery man for department store tripped on rope stretched across sidewalk); *Lessow v. Sherry,* 133 Conn. 350, 51 A.2d 49 (1947) (fruit and vegetable peddler slipped on icy sidewalk).

**7.** *Clink v. Steiner,* 162 Mich.App. 551, 413 N.W.2d 45 (1987)(paperboy slipped on icy driveway); *English v. Thomas,* 48 Okla. 247, 149 P. 906 (1915) (paperboy fell when railing collapsed). *But see, Sidle v. Humphrey,* 13 Ohio St.2d 45, 233 N.E.2d 589 (1968) (paperboy slipped on icy steps)(*superseded by statute, LaPlaca v. Brunswick Ambassador Lanes,* 61 Ohio App.3d 598, 573 N.E.2d 706 (1988)); *Stapleton v. Hyman,* 69 R.I. 466, 35 A.2d 6 (1943) (paperboy slipped on icy sidewalk).

**8.** *Ross v. Lowe,* 619 N.E.2d 911 (Ind.1993) (meter reader bit by dog); *Cowan v. One Hour Valet,* 151 W.Va. 941, 157 S.E.2d 843 (1967)(electric meter reader fell through floor); *Bradley v. Sobolewsky,* 91 Conn. 492, 99 A. 1067 (1917) (gas company employee bit by dog).

**9.** Judge Bazelon was similarly confused by these distinctions in *Smith v. Arbaugh's Restaurant,*

Inc., 469 F.2d 97, 99 (D.C.1972), *cert denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973):

> [W]e are once again struck by the awkwardness of fitting the circumstances of modern life into the rigid common law classifications of trespassers, licensees and invitees. More importantly, we do not believe the rules of liability imposed by courts in the eighteenth century are today the proper tools with which to allocate the costs and risk of loss for human injury.

The *Smith* Court went on to rule that the status of an entrant to property does not determine the duty of care owed by the landowner, thereby abolishing the licensee-invitee-trespasser distinctions.

**10.** *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). The United States Supreme Court referred to the judicial interpretation of the common-law distinctions in premises liability cases as a "semantic morass." 358 U.S. at 631, 79 S.Ct. at 410, 3 L.Ed.2d at 555.

**11.** *Moody v. Manny's Auto Repair,* 110 Nev. 320, 871 P.2d 935 (1994); *Limberhand v. Big Ditch Co.,* 218 Mont. 132, 706 P.2d 491 (1985); *Keller by Keller v. Mols,* 129 Ill.App.3d 208, 84 Ill.Dec.

other states have to some extent abolished the licensee-invitee distinction, but still hold that a premises owner owes a trespasser no duty whatsoever.[12]   At least two states have enacted statutes abrogating the distinction.[13]

Thomas Jefferson said that we should not look at our constitutions and laws with "sanctimonious reverence, and deem them like the ark of the covenant, too sacred to be touched."  Jefferson wrote that:

> I am certainly not an advocate for frequent and untried changes in laws and constitutions. . . .   But I know also, that laws and institutions must go hand in hand with the progress of the human mind. . . .   *We might as well require a man to wear still the coat which fitted him when a boy, as civilized society to remain ever under the regimen of their barbarous ancestors.*

Letter to Samuel Kercheval, July 12, 1816, *Writings of Thomas Jefferson* 10:42–43 (Paul L. Ford ed. 1899) (emphasis added).

I think that this Court in fact might well, in the future, address the possibility of dispensing with the distinctions between licensees, invitees, and trespassers, provided the argument is first cogently addressed at the circuit court level.   As Cardozo suggested seventy years ago, if there is no proof in the record that the plaintiff and defendant based their conduct on the licensee-invitee-trespasser distinctions, and proof that such a rule is "inconsistent with the sense of justice or

with the social welfare," there should be no hesitation by this Court in the future of frank avowal and full abandonment of the current set of common-law status distinctions in premises liability cases.

I am authorized to state that Chief Justice WORKMAN joins in this concurring opinion.

---

411, 472 N.E.2d 161 (1984) (only with regard to child entrants); *Webb v. City and Borough of Sitka,* 561 P.2d 731 (Alaska 1977); *Cates v. Beauregard Electric Cooperative, Inc.,* 328 So.2d 367 (La.1976); *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976); *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127 (R.I.1975) (*but see, Tantimonico v. Allendale Mut. Ins. Co.,* 637 A.2d 1056 (R.I.1994), restoring the status category of trespasser); *Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97 (C.A.D.C.1972), cert. denied, 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (Colo.1971)(*but see, Lakeview Associates, Ltd. v. Maes,* 907 P.2d 580 (Colo.1995), discussing the partial legislative resurrection of the status categories); *Pickard v. City & County of Honolulu,* 51 Haw. 134, 452 P.2d 445 (1969); *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968).

**12.**   *See Heins v. Webster Co.,* 250 Neb. 750, 552 N.W.2d 51 (1996); *Ford v. Board. of County Comm'rs of County of Dona Ana,* 118 N.M. 134, 879 P.2d 766 (1994); *Jones v. Hansen,* 254 Kan. 499, 867 P.2d 303 (1994); *Clarke v. Beckwith,* 858 P.2d 293 (Wyo.1993); *Hudson v. Gaitan,* 675 S.W.2d 699 (Tenn.1984); *Ragnone v. Portland School Dist. No. 1J,* 291 Or. 617, 633 P.2d 1287 (1981); *Poulin v. Colby College,* 402 A.2d 846 (Maine 1979); *O'Leary v. Coenen,* 251 N.W.2d 746 (N.D.1977); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1 (1975); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43 (1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972).   *See also, Wood v. Camp,* 284 So.2d 691 (Fla.1973) (landowner owes a duty of reasonable care to "licensees by invitation" of the property owner, as well as business or public invitees, but Florida Court declined to extend the unified standard of care to licensees who were uninvited or to trespassers).

**13.**   Connecticut,   *Conn.Gen.Stat.*   § 52–557a [1963];   Illinois, 740 *ILCS* 130/2 [1995].