**Willie WHITE, Plaintiff,**

v.

**PENSKE TRUCK LEASING CORPORATION, Penske Truck Leasing Co., Inc., and Penske Truck Leasing Co., Limited Partnership, Defendants.**

No. 1:01 CV 00997.

United States District Court,
M.D. North Carolina.

April 10, 2003.

Lawrence Egerton, Jr., Egerton & Associates, Greensboro, NC, John J. Korzen, Anderson Korzen & Associates, P.C., Kernersville, NC, for plaintiff.

Henry L. Kitchin, Jr., Helms Mulliss & Wicker, PLLC, Wilmington, MC, Jonathan Arthur Berkelhammer, Richard a. Coughlin, Manning A. Connors, III, Smith Moore, L.L.P., Greensboro, NC, for defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

## I. INTRODUCTION

This matter is currently before the Court on Defendants Penske Truck Leasing Corporation, Penske Truck Leasing Co., Inc., and Penske Truck Leasing Co., Limited Partnership's ("Defendants" or "Penske") Motion for Summary Judgment [Document # 11], Defendants' Motion to Exclude the Report and Testimony of Roger C. Allen [Document # 13], and Defendants' Motion to Exclude the Affidavit and Testimony of Linda Weseman [Document # 15]. For the reasons explained below, Defendants' Motion for Summary Judgment is GRANTED, and all claims asserted by Plaintiff against Defendants are hereby DISMISSED. Furthermore, Defendants' Motion to Exclude the Report and Testimony of Roger C. Allen and Defendants' Motion to Exclude the Affidavit and Testimony of Linda Weseman are hereby DISMISSED as moot.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The documents available to the Court indicate that Defendants Penske Truck Leasing Corp., Penske Truck Leasing Co., Inc., and Penske Truck Leasing Co., LP are businesses that lease trucks and trailers. (Answer ¶ 2.) At the time of the incident that forms the basis of the Complaint, Plaintiff Willie White was employed as a tractor-trailer driver by Bridgeways, Inc., ("Bridgeways").[1] (Compl.¶ 4.) Bridgeways leased, among other vehicles, a Freightliner Condo XL eighteen-wheel tractor-trailer (hereinafter "tractor unit") from Penske pursuant to a Vehicle Lease Service Agreement dated September 19, 1996. (Pl.'s Br. in Opp. to Mot. for Summ. J., Exh. 1.) At the time of the incident in dispute, Plaintiff was driving this leased Penske tractor unit.

The tractor unit has two grabrails or handholds for access to the fifth wheel area, which is also known as the back-of-cab area. (Defs.' Br. in Supp. of Mot. for Summ. J., Exhs. 2, 3.) One handhold is on the exhaust manifold on the passenger side of the vehicle, and the other is on the inside of the fin or cab extension on the driver's side of the vehicle. (Defs.' Br. in Supp. of Mot. for Summ. J., Exhs. 2, 3.) Deckplates extend across the space between the cab and the trailer which permit persons to enter the back-of-cab area from either side of the tractor unit. (Defs.' Br. in Supp. of Mot. for Summ. J., Exh. 4.) Two fiberglass steps, which lead to the deckplates, are rigidly attached to the siderails on each side of the cab. (Defs.' Br. in Supp. of Mot. for Summ. J., Exhs. 7, 8.)

On September 25, 2000, Plaintiff received a call from Bridgeways dispatching

---

1. Bridgeways is not named as a party in the instant matter.

him to haul a load to Massachusetts.[2] (White Dep. at 46.) The same day, Plaintiff picked up the tractor to which Bridgeways had assigned him. (White Dep. at 48–49.) The following morning, Plaintiff performed a pre-trip inspection on the tractor. Plaintiff noted that the tractor checked out properly during the inspection and asserts that he completed an inspection report which he filed in both his logbook and with Bridgeways.[3] (White Dep. at 50.) Plaintiff then drove the tractor to Proctor & Gamble to pick up a loaded trailer. (White Dep. at 48–49.) At Proctor & Gamble, Plaintiff continued his pre-trip inspection during which he found that a marker light was burnt out on the trailer. (White Dep. at 54–55.) Plaintiff then drove to Penske where he waited while his marker light was repaired. (White Dep. at 56.)

After Penske repaired the marker light, at approximately 11:30 A.M. on September 27, 2000, Plaintiff departed on his scheduled trip. (White Dep. at 53.) Around 7:00 P.M., as the weather was misting outside, Plaintiff stopped at a Truck Stops of America in Martinsburg, West Virginia, because he noticed that the marker lights were flickering on the trailer. (White Dep. at 46, 51.) After inspecting the trailer, Plaintiff determined that two bolts had come out of the pigtail bracket, a plate on the front of the trailer where the lights

attach to the trailer. (White Dep. at 46.) After Plaintiff purchased two replacement bolts inside the truck stop, he climbed the two steps leading up to the deckplates between the tractor and trailer to install the bolts. (White Dep. at 57.)

When Plaintiff completed the repairs, he was standing on the deckplates between the tractor and trailer. (White Dep. at 69.) As Plaintiff faced the rear-of-cab access area with his back to the driver's side of the tractor unit, he grabbed the handhold with his left hand to begin backing off of the deckplate onto the top step. (White Dep. at 69–70.) Plaintiff first picked up his right foot, while holding the handhold with his left hand, and placed his right foot on the top step. (White Dep. at 70.) He maintained his grasp on the handhold while he moved his left foot from the deckplate to the top step. (White Dep. at 70–71.) Once he had placed both feet upon the top step, he continued to hold onto the handhold attached to the fin with his left hand. (White Dep. at 69.) As Plaintiff began to descend to the lower step, Plaintiff had his left hand on the handhold and he lifted his right foot from the top step. (White Dep. at 73.) Plaintiff, who was wearing a splint on his left hand, then let go of the handhold because when he started down to the bottom step he could "only go down so far, and [he] ha[d] to let go of

**2.** The Court notes that the dates referred to by Plaintiff do not appear consistent. Plaintiff claims to have picked up the tractor unit on September 25, 2000, and then picked up the trailer the following day. However, from his deposition testimony it appears that he drove to Penske immediately after he picked up the trailer, and then departed on his assignment after he left Penske, which would have occurred on September 26, 2000. Plaintiff contends though that he was injured later on the night he departed from Penske, but asserts that the date of his injury is September 27, 2000. In its description of the facts, the Court uses the dates provided by Plaintiff,

even though it appears that there is a gap of one day, in order to provide continuity for the sequence of events.

**3.** Plaintiff does not offer a copy of the pre-trip inspection report or any other documents contained in his logbook as evidence because Plaintiff's wife threw his copy away when they moved. (White Dep. at 50.) Nevertheless, Plaintiff contends that the copy of the pre-trip inspection book found in the truck would show that the "truck had been wrote (sic) up numerous times for the broke (sic) step." (White Dep. at 52.)

that handhold, because [he] c[ould]n't hold on." (White Dep. at 71, 81.) With Plaintiff's left foot on the top step as his only point of contact with the tractor unit, Plaintiff lost his footing, and fell to the pavement where he suffered injuries to his wrist, shoulder, and neck. (White Dep. at 47–48.)

On May 23, 2001, Plaintiff filed this action in the General Court of Justice Superior Court Division of Guilford County, North Carolina. Plaintiff asserts that Defendants were negligent because they failed to have the truck-tractor equipped with back-deck handholds, failed to have the truck-tractor properly equipped with back-deck steps, and failed to properly maintain steps on the back-deck of the truck-tractor in compliance with 49 C.F.R. § 399.201–.211. (Compl.¶ 12.) Defendants removed the action to this Court based on assertions of diversity jurisdiction under 28 U.S.C. § 1332 on October 31, 2001.[4] Thereafter, the parties commenced discovery, and on October 16, 2002, Penske filed a Motion for Summary Judgment [Document # 11] seeking dismissal of Plaintiff's claims. On the same day, Penske also filed a Motion to Exclude the Report and Testimony of Roger C. Allen [Document # 13] and a Motion to Exclude the Affidavit and Testimony of Linda Weseman [Document # 15]. The Court will address Defendants' Motions in turn.

## III. DISCUSSION

### A. Motion for Summary Judgment

#### 1. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The defendant seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." 477 U.S. at 256, 106 S.Ct. at 2514. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." 477 U.S. at 250, 106 S.Ct. at 2511.

In *Celotex,* the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *Oksanen v. Page Mem'l Hosp.,* 912 F.2d 73, 78 (4th Cir.1990). In review-

---

4. The Complaint asserts no federal questions, and Defendants do not contend the Complaint alleges any federal questions.

ing the supported underlying facts, however, all inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. Instead, the evidentiary materials must show facts from which the finder of fact could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Moreover, "[a] party may not escape summary judgment on the mere hope that something will turn up at trial." *Ayers v. Pastime Amusement Co.*, 283 F.Supp. 773, 793 (D.S.C.1968).

### 2. Plaintiff's Negligence Claims

Penske has moved for summary judgment with respect to Plaintiff's negligence claims. Specifically, Plaintiff contends that Penske was negligent because Penske failed to have the tractor unit properly equipped with back-deck handholds, failed to have the truck-tractor properly equipped with back-deck steps, and failed to properly maintain steps on the back-deck of the truck-tractor in compliance with 49 C.F.R. § 399.201–.211. In response, Penske asserts that 49 C.F.R. § 399.207 does not apply in this instance. However, Penske further asserts that though Plaintiff relies on inapplicable regulations, their truck meets the requirements enumerated in the regulation cited by Plaintiff. Moreover, Defendants contend that they properly maintained the steps on the back-deck of the tractor-trailer. Accordingly, Defendants assert that they were not negligent with respect to Plaintiff's fall, and as a result, Plaintiff cannot maintain his negligence claims against them.

As an initial matter, because this case is based upon diversity jurisdiction, the Court must determine which state's law applies pursuant to the appropriate conflict of laws rule. A federal court exercising diversity jurisdiction must apply the law of the state in which it sits. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938). Therefore, the Court looks to North Carolina choice of law rules to determine which substantive law it must apply. The traditional conflict of laws rule in North Carolina is that matters affecting the substantial rights of the parties are determined by *lex loci*, the law of the situs of the claim, and remedial or procedural rights are determined by *lex fori*, the law of the forum. *Charnock v. Taylor*, 223 N.C. 360, 361–62, 26 S.E.2d 911, 913 (1943). For actions sounding in tort, the state where the injury occurred is considered the situs of the claim, because an act has legal significance only if the jurisdiction where it occurs recognizes that legal rights and obligations ensue from it. *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988); *Terry v. Pullman Trailmobile, a Div. of Pullman, Inc.*, 92 N.C.App. 687, 693, 376 S.E.2d 47, 51 (1989). Thus, under North Carolina law, when the injury giving rise to a negligence claim occurs in another state, the law of that state governs the resolution of the substantive issues in controversy. *Boudreau*, 322 N.C. at 335, 368 S.E.2d at 854. Accordingly, in the instant matter, the law of West Virginia, the place where Plaintiff was injured, governs Plaintiff's negligence claims.

#### a. Duty Owed to Plaintiff

" 'In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No

action for negligence will lie without a duty broken.' Syl. Pt. 1, *Parsley v. General Motors Acceptance Corp.*, 167 W.Va. 866, 280 S.E.2d 703 (1981)." Syllabus Point 4, *Jack v. Fritts*, 193 W.Va. 494, 495, 457 S.E.2d 431, 432 (1995). The Supreme Court of Appeals of West Virginia explained that duty "is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in light of the apparent risk." *Robertson v. LeMaster*, 171 W.Va. 607, 611, 301 S.E.2d 563, 567 (1983) (quoting William L. Prosser, *Handbook of the Law of Torts* § 53 (4th ed.1971)).

▆▆▆▆ Importantly, the determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury. Instead, "[t]he determination of whether the plaintiff is owed a duty of care by the defendant must be rendered as a matter of law by the court." *Jack*, 193 W.Va. at 498, 457 S.E.2d at 435. Under West Virginia law, "the ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised." Syllabus Point 3, *Sewell v. Gregory*, 179 W.Va. 585, 587, 371 S.E.2d 82, 83 (1988). "The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" *Id.* Although foreseeability of risk is a primary consideration in determining the scope of a duty an actor owes to another, "[b]eyond the question of forseeability, the existence of duty also involves policy considerations underlying the core issue of the scope of the legal system's protection." *Robertson*, 171 W.Va. at 612, 301 S.E.2d at 568. "Such considerations include the likelihood of injury, the magnitude of the burden of

guarding against it, and the consequences of placing that burden on the defendant." *Id.*

In the instant matter, Defendants were the owners of the tractor unit that Plaintiff was driving at the time of his fall. Moreover, pursuant to the Vehicle Lease Service Agreement, Defendants were responsible for maintaining and repairing the tractor unit. (Pl.'s Br. in Opp. to Mot. for Summ. J., Exh. 1.) Because West Virginia case law does not contain a case on point with facts similar to the instant matter, this Court finds that it is foreseeable that Plaintiff, as a driver of a tractor unit for which Defendants are responsible, would need to use both the steps and handholds that lead to the back-of-cab area in order to dismount this area of the tractor unit as used in this instance. Indeed, Defendants owed a duty to Plaintiff to ensure that the tractor unit conformed to applicable regulations, and moreover, Defendants owed Plaintiff a duty to maintain the tractor unit in a safe working condition. Accordingly, because the Court finds that Defendants did owe Plaintiff a duty of care, the Court must next examine whether Defendants committed an act or omission that violated the duty of care which they owed to Plaintiff.

b. Breach of Duty Owed to Plaintiff

Because it is clear that Defendants owed Plaintiff a duty of care as the parties responsible for the repair and maintenance of the vehicle, in order to demonstrate that Defendants were negligent, West Virginia law requires that Defendants engage in an act or omission that violates their duty. *Jack*, 193 W.Va. at 495, 457 S.E.2d at 432. Plaintiff contends that Defendants violated their duty owed to him because the tractor unit did not satisfy the applicable federal regulations regarding the configuration of the steps and handrails for back-of-cab

access, and because Defendants did not repair the broken step from which he fell. The Court will address each of these arguments in turn.

(1) Plaintiff's Argument that the Configuration of the Steps and Handhold Did Not Satisfy Federal Regulations

■ Plaintiff first argues that the configuration of the handrails and steps leading to the back-of-cab access area of the tractor unit did not satisfy the applicable standard of care, which Plaintiff contends is found at 49 C.F.R. § 399.207. Defendants, in response, correctly argues that the regulation cited by Plaintiff is not applicable to Plaintiff's tractor unit on its face because the regulation only applies to cab-over-engine (COE) vehicles. Defendants, however, contend that the tractor unit in question satisfied The Maintenance Council of the American Trucking Association ("TMCATA") standards for safe back-of-cab access, promulgated in April of 1989, which are illustrative of the standards to which Plaintiff's specific tractor unit in this case should conform. For back-of-cab access in conventional truck configurations, the TMCATA standards require, in pertinent part, that "the rear of cab access system shall include step(s), handhold(s) and deckplate to provide at least three points of contact at all points of vertical climbing." (Defs.' Br. in Supp. of Mot. for Summ. J., Exh. 5.) The standards further provide that "[d]ue to design constraints, both hands may be required to use one handhold to achieve three point contact." (Defs.' Br. in Supp. of Mot. for Summ. J., Exh. 5.) In support of their contention that the tractor unit conforms to the TMCATA standards, Defendants rely on the expert opinion of Russell Noble, a truck engineer who worked for the

Chrysler Corporation for thirty-two years. After Mr. Noble's inspection of the tractor unit,[5] he reported that "[t]his vehicle fully meets all criteria contained in [TMCATA]." (Noble Engineering Rep. at 3 (emphasis omitted).) Moreover, as demonstrated by Mr. Noble in photographs and on videotape of Plaintiff's tractor unit, Plaintiff could have maintained three point contact at all times while he descended the steps. (Defs.' Mot. for Summ. J., Exh. 2.)

Nevertheless, even using the standard cited by Plaintiff, Defendants assert that the tractor unit from which Plaintiff fell was in compliance with 49 C.F.R. § 399.207. As previously noted, Plaintiff relies on 49 C.F.R. § 399.207, which provides, in pertinent part, that:

*General Rule.* Any person entering or exiting the cab or accessing the rear portion of a high profile COE truck or truck-tractor shall be afforded sufficient steps and hand-holds, and/or deckplates to allow the user to have at least 3 limbs in contact with the truck or tractor-trailer at any time.

49 C.F.R. § 399.207(a). Defendants again rely on Mr. Noble's inspection of the tractor unit,[6] whereupon he reported that:

[T]he incident truck-tractor fully complies with the criteria contained in [49 C.F.R. § 399.207]. Sufficient steps, a hand hold capable of accommodating two hands, and a deck plate are provided. These components allow the user to have at least three limbs in contact with the truck-tractor while climbing to, or descending from, the back-of-cab (BOC) area . . . .

(Noble Engineering Rep. at 2 (emphasis omitted).) Mr. Noble also supports his conclusions with photographs and a video-

---

**5.** Mr. Noble inspected the incident truck on or about June 15, 2002.

**6.** Mr. Noble inspected the incident truck on or about June 15, 2002.

tape demonstrating the tractor unit's compliance with the provisions of 49 C.F.R. § 399.207. (Defs.' Mot. for Summ. J., Exh. 2.)

In response to Defendants' position, Plaintiff cites the Supreme Court of West Virginia which has held that:

Compliance with the appropriate regulations is competent evidence of due care, but not *conclusive* evidence of due care. If the defendants knew or should have known of some risk that would be prevented by reasonable measures not required by the regulation, they were negligent if they did not take such measures. It is settled law that a statute of regulation merely sets a floor of due care.

*Miller v. Warren*, 182 W.Va. 560, 562, 390 S.E.2d 207, 209 (1990) (citations omitted). Plaintiff attempts to create a genuine issue of material fact by alleging that Defendants knew or should have known that the handholds and steps on Plaintiff's tractor unit presented a risk to him by relying both on his deposition testimony and the expert opinions of Linda Weseman and Roger Allen.[7] In his deposition, Plaintiff repeatedly asserts that he was unable to descend from the top step to the bottom step of the back-of-cab area without removing his hand from the handhold. (White Dep. at 72–74.) Additionally, Ms. Weseman's testimony focuses on how Penske could better design the handholds on their tractor unit. Notably though, Ms. Weseman did not inspect the actual tractor unit from which Plaintiff fell, and accordingly, her opinion is based upon her general knowledge of tractor-truck units and Plaintiff's description of the events.

To rebut Plaintiff's claim that Defendants knew or should have known of a risk presented by the handholds and steps, Defendants once again rely on Mr. Noble's photographs and videotaped demonstration of accessing and dismounting the rear-of-cab area. (Defs.' Mot. for Summ. J., Exh. 2.) Based upon the evidence presented by both parties, it is clear that dismounting the rear-of-cab area while holding onto the handhold is possible, contrary to Plaintiff's assertions. Moreover, as already noted, Plaintiff's experts do not address why the specific tractor unit in the instant matter presented a risk because they did not actually inspect the unit. Therefore, Plaintiff does not present any evidence to demonstrate that Defendants either knew or should have known that the handhold and step configuration presented a risk.

Plaintiff's final attempt to demonstrate that Defendants breached their duty owed to him is by arguing that Mr. Noble's demonstration of a dismount from the back-of-cab area does not comply with the instructions found in the instruction manual of the tractor unit. Specifically, Plaintiff asserts that Mr. Noble failed to comply with the instructions in the driver's manual of the tractor unit because he did not "[s]tep to the ground with [his] upper foot first." (Defs.' Br. in Supp. of Mot. for Summ. J., Exh. 6.) Because Mr. Noble cites the driver's manual as one source which demonstrates the proper technique for accessing the back-of-cab area and Mr. Noble does not demonstrate that technique as directed by the driver's manual, Plaintiff contends that Mr. Noble's conclusion that the tractor unit meets all applicable standards is erroneous. However, Plaintiff's reliance on this argument is misplaced for two reasons. First, even though Plaintiff refers to both the photographs and videotape provided by Mr. No-

---

**7.** Plaintiff does not oppose Defendants' Motion to Exclude the Report and Testimony of Roger C. Allen. Accordingly, for purposes of this analysis, the Court will rely solely on the opinion of Plaintiff's other expert, Ms. Linda Weseman.

ble to demonstrate that Mr. Noble's conclusion is inappropriate, the videotape does not support Plaintiff's contention. Indeed, the videotape attached as Exhibit 2 to Defendants' Motion for Summary Judgment clearly shows Mr. Noble both mounting and dismounting the tractor unit according to the instructions noted in the driver's manual. Second, unlike the TMCATA standards or 49 C.F.R. § 399.207, the driver's manual is not a standard outlining the configuration of the steps and handholds for rear-of-cab access. Mr. Noble advances the instructions in the driver's manual specifically in support of Defendants' argument that Defendants were not the proximate cause of Plaintiff's injury, not as evidence of the proper configuration of the back-of-cab area as Plaintiff contends.[8] (Noble Engineering Rep. at 3.) Mr. Noble does not assert that the driver's manual provides any indication of the appropriate standards for the configuration of the back-of-cab area, but rather that the driver's manual illustrates the appropriate procedures for mounting and dismounting the steps.[9] Moreover, even though Plaintiff contends that at the time of the incident, the handhold attached to the cab was dented and difficult to grasp with both hands, Plaintiff's experts admit that the handhold configuration itself conformed to the applicable standards. (Weseman Dep. at 106–07.)[10] Accordingly, in the absence of any evidence proffered by Plaintiff to create a genuine issue of material fact that Defendants failed to

comply with 49 C.F.R. § 399.207 or that Defendants knew or should have known that the configuration of the handhold and steps presented a risk to Plaintiff, Plaintiff cannot maintain his negligence claim against Defendants.

(2) Plaintiff's Argument that Defendants Failed to Maintain the Top Step with Due Care

Plaintiff also claims that Defendants were negligent because they failed to maintain the top step leading to the back-of-cab area with due care. As evidence to support his allegation, Plaintiff submits two affidavits, one from himself and the other from his wife, to support his assertion that the step was broken prior to his fall. Plaintiff also provides a repair order which he contends demonstrates that the step was repaired after his fall. (White Dep. at 58–60.) Specifically, Plaintiff's affidavit asserts that "there was damage to the top step to the rear of the tractor on the driver's side." (Willie White Aff. ¶ 5.) Plaintiff's wife, Georgia White, asserts that she noticed that "the top step on the driver's side to the rear of the tractor was buckled and cracked." (Georgia White Aff. ¶ 5.) However, the repair order that Plaintiff relies upon to show that the repair took place after he fell is dated August 29, 2000, which is over four weeks before Plaintiff's fall. (Defs.' Br. in Supp. of Mot. for Summ. J., Exh. 9.)

---

**8.** In his report, Mr. Noble states that "the Driver's Manual for 1998 Freightliner Century Conventional describes the procedure for using the grabrail to maintain 3–point contact while dismounting the deckplate." (Noble Engineering Rep. at 3.)

**9.** Plaintiff also argues that Mr. Noble's body position during his dismount did not conform to the procedures in the instruction manual. Plaintiff asserts that Mr. Noble dismounted the tractor unit sideways, as opposed to a

"face in" or "face out" egress. However, Mr. Noble's dismount could be considered a "face in" egress method because the balls of the feet maintain contact with the steps when he dismounts.

**10.** The Court also notes that if it considered Roger Allen's deposition, it would support the same conclusion in that he relates that Plaintiff's tractor unit meets the federal standards promulgated under 49 C.F.R. § 399.207. (Allen Dep. at 120, 123–24.)

Consequently, the repair order cannot support Plaintiff's assertion that it demonstrates that the top step was replaced after his fall. There is no evidence of any other repair to the steps. Plaintiff also argues that Defendants should have copies of the repairs orders showing repairs to the steps. However, even though Plaintiff received copies of Defendants' repair orders for the tractor unit through May 4, 2001, in response to his document production request, Plaintiff does not offer any other repair orders to support his contention that the step had previously been broken or that the step had been repaired since his fall. (Pl.'s Br. in Opp. to Mot. for Summ. J, Exh. 2.)

With respect to the one repair order Plaintiff produced, Plaintiff contends that the fender kit listed in the August 29, 2000 repair order was used to repair the broken step.[11] Specifically, the fender kit listed in the repair order is a quarter fender kit FLT1585B. Mr. Noble, as part of his inspection of the tractor unit, purchased an identical quarter fender kit to identify its component parts. Upon his inspection, he determined that the kit contains no steps or parts that could be used to replace the step that Plaintiff alleges was broken and subsequently repaired as part of the repair work on the fender. (Noble Engineering Rep. at 3.)

Plaintiff also attempts to create an issue of fact regarding Defendants' failure to repair the steps by suggesting that he filled out numerous inspection reports noting the broken step prior to his fall on September 27, 2000. (White Dep. at 50.) Plaintiff asserts that the reports were filled out in triplicate with copies for the driver, the pre-trip inspection book kept in the truck, and Bridgeways. (White Dep. at 50–52.) Plaintiff, however, has not produced any evidence of those reports in this case. Plaintiff's only contention and forecast of evidence is that he had copies of his pre-trip inspection reports, but his wife threw them out when they moved from one house to another. (White Dep. at 50.) Absent these allegations, there has been no evidence presented to suggest that Defendants are in possession of any copies of the reports Plaintiff contends existed about repair orders for the step.[12] Likewise, Mr. Noble indicates that "in [his] review of the incident truck-tractor . . . records, repair orders, and road call reports, there is no entry relating to a broke, repaired, or replaced step." (Noble Engineering Rep. at 3.) Mr. Noble also indicates that his personal inspection of the tractor unit did not reveal any evidence of

11. Plaintiff's counsel argues in the Plaintiff's Brief in Opposition to Motion for Summary Judgment that Plaintiff did not contend that the repair order demonstrated that the step had been fixed, but rather that Plaintiff relies upon it to support his contention that the step was not repaired before his fall. Plaintiff's deposition, however, clearly demonstrates that Plaintiff believes that the fender kit listed on the repair order replaced the broken step. In response to the question, "So is it your testimony that the top step closest to the tire was—gets replaced as part of the fender kit that's referred to in the repair order, Exhibit 3?," Plaintiff responds, "Yes." (White Dep. at 60.) Even though Plaintiff's counsel contends that Plaintiff "was obviously confused," Plain-

tiff does not refer to the repair order in his subsequent affidavit. (Pl.'s Br. in Opp. to Mot. for Summ. J. at 12.) Therefore, Plaintiff never offers any other evidence that the step was either broken or repaired after his fall.

12. In response to Plaintiff's interrogatories, Defendants state that "[a]ny driver inspection reports provided to Defendants are generally maintained in the maintenance file for only 90 days, though repair orders generated remain with the file, a copy of which through May 4, 2001, was produced . . . ." (Pl.'s Br. in Opp. to Mot. for Summ. J., Exh. 2.) Plaintiff does not dispute Defendants' business practices.

"damage to the rear steps as described by Mr. White, nor to the Chassis Side Fairings support longitudinals that structurally support the step surfaces" nor "evidence of distress nor of repairs having been made in that area." (Noble Engineering Rep. at 3, 5.) Plaintiff has not produced any contradictory evidence to rebut Mr. Noble's opinions.

Therefore, Plaintiff's evidence of a broken step amounts to no more than a "scintilla of evidence." Because a mere scintilla of evidence cannot defeat a motion for summary judgment, the Court finds that no reasonable trier of fact could find for Plaintiff based upon the evidence he has offered. Moreover, Plaintiff cannot "escape summary judgment on the mere hope that something will turn up at trial." *Ayers*, 283 F.Supp. at 793. Consequently, the Court cannot find that Defendant has raised a genuine issue of material fact upon which he could prevail at trial.

"It is true that because of the peculiarly elusive nature of the concept of negligence, it is the rare personal injury case which may be properly disposed of by summary judgment." *Bland v. Norfolk and S. R.R. Co.*, 406 F.2d 863, 866 (4th Cir.1969) (citations omitted). Nevertheless, summary judgment is appropriate in certain negligence cases. The Court finds that, in the instant matter, summary judgment is appropriate because Plaintiff cannot create a genuine issue of material fact demonstrating either that Defendants violated any regulation with respect to the configuration of the handhold or that the top step of the tractor unit was broken. Consequently, Defendants' Motion for Summary Judgment is GRANTED.

B. Motions to Exclude Expert Testimony

In addition to their Motion for Summary Judgment, Defendants filed a Motion to Exclude the Report and Testimony of Roger C. Allen and a Motion to Exclude the Affidavit and Testimony of Linda Weseman. Because the Court has granted Defendants' Motion for Summary Judgment, Plaintiff has no remaining claims against Penske. As such, Penske's requests to exclude the testimony and other supporting materials offered by Plaintiff's expert witnesses are moot and are therefore DISMISSED.

IV. CONCLUSION

For the reasons stated above, the Court finds that there are no genuine issues of material fact with respect to any of Plaintiff's negligence claims. Therefore, Defendants' Motion for Summary Judgment is GRANTED and all claims asserted by Plaintiff against Defendants are hereby DISMISSED. Furthermore, because Plaintiff has no remaining claims against Defendants, Defendants' Motion to Exclude the Report and Testimony of Roger C. Allen and Defendants' Motion to Exclude the Affidavit and Testimony of Linda Weseman are DISMISSED as moot.

An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

*ORDER AND JUDGMENT*

For the reasons stated in the Court's Memorandum Opinion, filed contemporaneously herewith, it is hereby ORDERED, ADJUDGED AND DECREED that Defendants' Motion for Summary Judgment [Document # 11] is GRANTED. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all of Plaintiff's claims against Defendants are hereby DISMISSED.

It is further hereby ORDERED, ADJUDGED AND DECREED that Defendants' Motion to Exclude the Report and

Testimony of Roger C. Allen [Document # 13], and Defendants' Motion to Exclude the Affidavit and Testimony of Linda Weseman [Document # 15] are hereby DISMISSED as moot.